PRESENT:  Goodwyn, Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Millette, S.J.

CHARLES D. CHAFFINS, ET AL.

v.  Record No. 160582

OPINION BY
JUSTICE WILLIAM C. MIMS
July 13, 2017

ATLANTIC COAST PIPELINE, LLC

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Donald C. Blessing, Judge

In this appeal, we consider whether a natural gas company's notices of intent to enter private property complied with Code § 56-49.01.

I.  Background and Procedural History

The Atlantic Coast Pipeline, LLC ("ACP") is a public service company "engaged in the underground storage and transportation of natural gas in interstate commerce."  As such, it is a "natural gas company," as defined by federal law, and subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC").  15 U.S.C. § 717 *et seq.*  ACP is seeking FERC's regulatory approval to build a natural gas transmission line that would extend from West Virginia to North Carolina, passing through the Commonwealth.  As part of this process, ACP must conduct surveys, tests, appraisals, and other examinations upon properties located along the pipeline's proposed routes.

Appellants, Charles and Linda Chaffins, Michael Huntley, and Beverly McQuary ("Landowners"), own real property in Buckingham County along a proposed route.  On March 6, 2015, ACP sent Landowners letters seeking permission to enter their properties to conduct preliminary surveys and studies.  The letters explained that "[c]onducting these surveys and environmental studies is required as part of the permitting process for" the pipeline.

When Landowners withheld their permission, ACP provided notices of intent to enter their properties "on or after April 27, 2015" pursuant to Code § 56-49.01. The notices explained that Code § 56-49.01 "authorizes certain natural gas companies to enter upon property, without permission, for examinations, tests, hand auger borings, appraisals and surveys." However, rather than enter the properties at that time, ACP filed petitions for declaratory judgment against Landowners. It sought an order declaring that the notices of intent to enter provided ACP with a right to enter Landowners' properties under Code § 56-49.01.

Landowners separately demurred. They argued, in part, that by only stating that the entry would occur "on or after April 27, 2015," the notices failed to "set forth the date of the intended entry" as required by Code § 56-49.01(C). The circuit court overruled the demurrers, finding "no flaw in the notification process that's taken place," and ordered that Landowners file responsive pleadings.

The case proceeded to a hearing on the merits of ACP's petition, wherein the circuit court again heard argument on the sufficiency of the notices. In concluding that ACP's notices provided a right to enter Landowners' properties, the court reasoned that the word "intended" in Code § 56-49.01(C) suggests that the notices need only provide a "hope[ful]" date of entry that "may have to change" depending on "weather, workloads on other properties or so forth." Accordingly, on April 13, 2016, the circuit court issued a final order holding that ACP was entitled to enter Landowners' properties pursuant to Code § 56-49.01. We granted Landowners this appeal.

II.    Analysis

Landowners maintain on appeal that by only stating the entry would occur "on or after April 27, 2015," ACP's notices of intent to enter failed to "set forth the date of the intended

2

entry" as required by Code § 56-49.01(C).  ACP responds that the statute does not require

notices to provide dates certain upon which the entry will occur, but rather only the date of

"intended," or planned, entry.  This argument presents an issue of statutory interpretation, which

we review de novo.  *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639

S.E.2d 174, 178 (2007).

When construing a statute, our primary objective is to ascertain and give effect to the

legislative intent, which "is initially found in the words of the statute itself."  *Crown Cent.*

*Petroleum Corp. v. Hill*, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997).  "[I]f those words are clear

and unambiguous, we do not rely on rules of statutory construction."  *Id*.  However,

"consideration of the entire statute . . . to place its terms in context to ascertain their plain

meaning does not offend [this] rule because 'it is our duty to interpret the several parts of a

statute as a consistent and harmonious whole so as to effectuate the legislative goal.'"  *Eberhardt*

*v. Fairfax Cnty. Emples. Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95, 721 S.E.2d 524, 526 (2012)

(quoting *Virginia Electric & Power Co. v. Board of County Supervisors*, 226 Va. 382, 387-88,

309 S.E.2d 308, 311 (1983)).

A.  Code § 56-49.01

Code § 56-49.01 provides, in relevant part, that

> A.  Any firm, corporation, company, or partnership, organized for the
> bona fide purpose of operating as a natural gas company as defined
> in 15 U.S.C. § 717a, as amended, may make such examinations,
> tests, hand auger borings, appraisals, and surveys for its proposed
> line or location of its works as are necessary (i) to satisfy any
> regulatory requirements and (ii) for the selection of the most
> advantageous location or route, . . . [and] may enter upon any
> property without the written permission of its owner if (a) the
> natural gas company has requested the owner's permission to
> inspect the property as provided in subsection B, (b) the owner's
> written permission is not received prior to the date entry is

3

proposed, and (c) the natural gas company has given the owner notice of intent to enter as provided in subsection C . . . .

B. A request for permission to inspect shall (i) be sent to the owner by certified mail, (ii) set forth the date such inspection is proposed to be made, and (iii) be made not less than 15 days prior to the date of the proposed inspection.

C. Notice of intent to enter shall (i) be sent to the owner by certified mail, (ii) set forth the date of the intended entry, and (iii) be made not less than 15 days prior to the date of mailing of the notice of intent to enter.

This statute provides a mechanism by which natural gas companies may enter private property without permission. First, the company must request the owner's permission to inspect the property on a "proposed" date. Code § 56-49.01(A) and (B). This request must be made "not less than 15 days prior to the date of the proposed inspection." *Id.* If written permission is not received prior to the proposed date of entry, the company must send the owner a "[n]otice of intent to enter" that "set[s] forth the date of the intended entry." Code § 56-49.01(A) and (C). Again, this notice must "be made not less than 15 days prior to the date of mailing of the notice of intent to enter." *Id.*

Importantly, at each step, the natural gas company must provide advance notice. These notice requirements allow the landowner to be present during the tests if desired, arrange for livestock to be confined prior to the entry, and ensure that any property damage is documented. *See* Code § 56-49.01(D) ("The natural gas company shall make reimbursement for any actual damages resulting from such entry."). The landowner may also wish to ensure that "motor vehicles, self-propelled machinery, and power equipment" are not used on the property without permission, as provided in Code § 56-49.01(A).

When read in this context, the requirement that a notice of intent to enter must "set forth the date of the intended entry" has an unmistakable meaning. The notice must provide the

4

landowner with dates certain upon which the natural gas company intends to enter the property. ACP's "on or after" notices did not do this. At best, they informed Landowners that it was possible the entry would occur on April 27, 2015. But they also reasonably implied that it could be an indeterminate amount of time later. In fact, the notices allow for the possibility that the entry could occur years after the stated date. This vagueness provided Landowners with no meaningful way of knowing when the entry would occur and thereby rendered the notices ineffective.

Nevertheless, ACP contends that the above interpretation leads to an absurd result. *See Commonwealth v. Doe*, 278 Va. 223, 230, 682 S.E.2d 906 (2009) ("[A] court must avoid any literal interpretation of a statute that would lead to absurd results."). It argues that "practically speaking," "[a]ny number of issues can affect the commencement of surveys on the 'intended' date, including weather, equipment problems, and delays resulting from surveys on other properties." In such a scenario, ACP asserts that it would be "absurd" if it were required to "reissue notices, wait another 15 days, and then hope that external circumstances do not again prevent surveying activities on the specified date."

The phrase "absurd result" has a specific meaning in our jurisprudence. It "describe[s] situations in which the law would be internally inconsistent or otherwise incapable of operation." *Boynton v. Kilgore*, 271 Va. 220, 227 n.9, 623 S.E.2d 922, 926 n.9 (2006) (quoting *Cook v. Commonwealth*, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004)). While in some cases the above interpretation of Code § 56-49.01(C) may require ACP to reissue a notice of intent to enter, this does not render the statute internally inconsistent or incapable of operation. It would be, at most, inconvenient or logistically difficult for ACP. However, the General Assembly has determined

5

that such difficulties are necessary in exchange for the privilege of entering private property without the owner's permission.

In short, Code § 56-49.01(C) requires that a notice of intent to enter provide dates certain upon which entry is intended. ACP's "on or after" notices failed to do this.

B. Mootness

Nevertheless, ACP argues that intervening events have rendered this appeal moot. On June 17, 2016, after the circuit court issued its order, ACP sent Landowners additional notices of intent to enter their properties. These additional notices referenced the circuit court's order, which "confirm[ed]" ACP's right to enter Landowners' properties under the original notices. They then stated, "[a]ccordingly, [ACP] intends to enter upon [Landowners' properties] in order to perform studies and surveys" between July 6, 2016 and July 11, 2016.[1] ACP argues that this appeal is moot because the additional notices, which omit the disputed "on or after" language and include dates certain for the intended entry, are the "operative documents" and clearly satisfy the requirements of Code § 56-49.01(C). In its view, addressing the sufficiency of the original notices answers a question this case no longer presents.

---

[1] As noted, Code § 56-49.01(C) requires that a notice of intent to enter "set forth the date of the intended entry." Focusing on the word "date" could suggest that a natural gas company only has a 24-hour period to complete its surveys and tests. However, we do not read a word or phrase in isolation, but in context. Code § 56-49.01(A) provides that a natural gas company may enter upon private property to "make such examinations tests, hand auger borings, appraisals, and surveys for its proposed line or location of its works as are necessary (i) to satisfy any regulatory requirements and (ii) for the selection of the most advantageous location or route." At oral argument, Landowners conceded that the nature of a given property may render the completion of these surveys and tests in one day impossible. In such cases, Landowners do not contest that Code § 56-49.01(C) only requires that a notice of intent to enter provide a limited range of dates as is necessary to complete the surveys and tests.

Here, the additional notices explained that completion of the necessary tests would require that five distinct crews enter Landowners' properties. They further provided the limited dates on which each crew would be present. Landowners concede that the timeframes set forth in the additional notices for each crew were "reasonable" as applied to their properties and thereby satisfied the requirements of Code § 56-49.01(C).

6

Generally, "a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist:

> Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded. Only real controversies and existing rights are entitled to invoke the exercise of their powers."

*E.C. v. Dep't of Juvenile Justice*, 283 Va. 522, 530, 722 S.E.2d 827, 831 (2012); *see also Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452, 739 S.E.2d 636, 639 (2013). This case is not moot because the controversy between the litigants still remains.

Despite arguing that the additional notices are now the "operative documents," ACP has continually maintained before this Court and throughout this litigation that its original "on or after" notices are valid and comply with Code § 56-49.01(C). These original notices, being sanctioned by the circuit court, entitle ACP to enter Landowners' properties "on or after April 27, 2015." By contrast, the additional notices authorize entry for a limited date range – July 6, 2016 through July 11, 2016. In light of ACP's position that the original notices are still valid, the additional notices could only have supplanted the original notices for their stated date range – on and after July 12, 2016 the additional notices were inoperable and provided no right of entry. However, July 12, 2016 is "after" April 27, 2015, so the original notices would provide a right of entry on this date if they are valid as ACP contends. In fact, by their explicit, open-ended terms, they would provide ACP with an ongoing right of entry onto Landowners' properties to this day for any of the purposes outlined in Code § 56-49.01(A).

Thus, ACP's contention that there is no longer a controversy is incorrect.  The circuit court's order held that ACP is entitled to enter Landowners' properties under the original notices.  The additional notices in no way repudiate the original notices,[2] and ACP has refused to concede that the original notices are flawed.  Accordingly, this case is not moot because there is an actual, ongoing controversy regarding ACP's right under the original notices to enter Landowners' properties for the purposes set forth in Code § 56-49.01.

### III.  Conclusion

In sum, the case is not moot, and ACP's "on or after" notices did not "set forth the date of the intended entry" as required by Code § 56-49.01(C).  Accordingly, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[2] In fact, the additional notices referenced the circuit court's order, which sustained the original notices, as the basis for ACP's authority to enter Landowners' properties.