PRESENT: Lemons, C.J., Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Russell, S.J.

KOHL'S DEPARTMENT STORES, INC.

v. Record No. 160681

OPINION BY
JUSTICE WILLIAM C. MIMS
March 22, 2018

VIRGINIA DEPARTMENT OF TAXATION

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

In this appeal, we consider the extent to which a corporate taxpayer must include in its

Virginia taxable income royalties paid to an intangible holding company.[1]

I. Background and Procedural History

Kohl's Department Stores, Inc. ("Kohl's") is a corporation organized under the laws of

Delaware. It operates retail stores throughout the United States, including Virginia. Kohl's

Illinois, Inc. ("Kohl's Illinois"), a corporation organized under the laws of Nevada, is an affiliate

of Kohl's. Kohl's Illinois operates retail stores in select states, none of which are in Virginia.

Kohl's Illinois also owns, manages, and licenses certain intellectual property. Kohl's

entered into a license agreement with Kohl's Illinois for the use of this intellectual property.

Pursuant to this agreement, Kohl's paid $441,942,347 in royalties to Kohl's Illinois during the

taxable year that ended on January 31, 2009 and $481,788,205 during the taxable year that ended

---

[1] In our initial opinion, we found that Code § 58.1-402(B)(8)(a)(1) was ambiguous and resolved this ambiguity by looking to "the occasion and necessity of the law, . . . the causes which moved the Legislature to enact it." *Kohl's Dep't Stores, Inc. v. Virginia Dep't of Taxation*, 294 Va. 57, 67, 803 S.E.2d 336, 341-42 (2017) (quoting *Ambrogi*, 224 Va. at 386-87, 297 S.E.2d at 663). We also considered "the construction given to [the statute] by [the Department]," and determined that construction was "reasonable." *Id.* at 68, 803 S.E.2d at 342 (citing *Verizon Online LLC v. Horbal*, 293 Va. 176, 182, 796 S.E.2d 409, 412 (2017)).

Kohl's subsequently filed a petition for rehearing in which it correctly noted that in proceedings commenced under Code § 58.1-1825, "rulings and administrative interpretations other than those described in subdivisions 2 and 3 shall not be admitted into evidence and shall be accorded no weight." Petition for Rehearing at 1 (quoting Code § 58.1-205(4)). Pursuant to Rule 5:37, we grant Kohl's petition for rehearing and issue this revised opinion.

on January 30, 2010. When calculating its federal taxable income for these years, Kohl's deducted these royalty payments from its income as an ordinary and necessary business expense under 26 U.S.C. § 162(a). Conversely, Kohl's Illinois included the royalties as income in its taxable income calculations.

However, Kohl's Illinois did not ultimately pay state income taxes on a substantial portion of the royalties. Each state in which Kohl's Illinois filed a return only taxed an apportionable share of its taxable income.[2] This left a substantial portion of the royalties untaxed, as they were not fairly attributable to Kohl's Illinois's activities in most states. In this capacity, Kohl's Illinois functions as an intangible holding company ("IHC"). James A. Amdur, *State Income Tax Treatment of Intangible Holding Companies*, 11 A.L.R. 6th 543 (2006).

> Under this type of arrangement, a corporation typically transfers intangible assets (such as patents, trademarks, and trade names) to a subsidiary incorporated for that purpose (an "intangible holding company") that is domiciled in a state which does not tax income from intangibles, generally Delaware. The intangible holding company then licenses the intangibles to the parent corporation . . . in exchange for the payment of royalties, which the licensees deduct on their state income tax returns in the states where they conduct business. However, the intangible holding company does not file income tax returns in those states because it is not physically present there, and thus its royalty income is not subject to state income tax.

---

[2] "Under both the Due Process and the Commerce Clauses of the [United States] Constitution, a State may not, when imposing an income-based tax, 'tax value earned outside its borders.'" *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983) (quoting *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982)). Rather, a state is permitted to tax a corporation on "an apportionable share of the multistate business carried on in part in the taxing State." *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 778 (1992); *see also Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977) ("[A] tax [will be sustained] against [a] Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.").

*Id.* at 552-53. This mechanism only operates to avoid state taxation in "separate reporting states" – that is, "states in which each corporation [even within a corporate family] files a separate income tax return." *Id*. at 553. IHC's "do not reduce state income taxes in 'combined reporting' states," wherein "an affiliated group of corporations engaged in a common enterprise . . . file a combined income tax return." *Id.* In these states, "the intercompany transactions are eliminated." *Id.*[3]

Generally speaking, Virginia is a separate reporting state. Code § 58.1-400. In 2004, the General Assembly sought to close the IHC loophole by enacting an "add back" statute, Code § 58.1-402(B)(8)(a). Department of Taxation, 2004 Special Session I, Fiscal Impact Statement for HB 5018 (estimating that the add back statute would increase the Commonwealth's tax revenue by $34 million in 2005). Under Code § 58.1-402(A), corporate taxpayers calculate their Virginia taxable income by starting with their federal taxable income and then making certain adjustments. The add back statute requires corporations to add to their federal taxable income "the amount of any intangible expenses and costs" paid to their "related members to the extent such expenses and costs were . . . deducted in computing federal taxable income." Code § 58.1-402(B)(8)(a).

The parties do not contest that Kohl's royalty payments were "intangible expenses and costs" paid to a "related member." However, Kohl's claims that they fall within the "subject-to-

---

[3] As a result of its business activities during the years in issue, Kohl's Illinois filed tax returns in both separate and combined reporting states. Specifically, Kohl's Illinois filed separate returns in the following states: Arkansas, Florida, Iowa, Louisiana, New Jersey, New Mexico, North Carolina, Oklahoma, and South Carolina (collectively, the "Separate Return States"). Kohl's and Kohl's Illinois filed combined returns in the following states: Alaska, California, Idaho, Illinois, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New York, North Dakota, Oregon, Utah, Vermont, West Virginia, and Wisconsin (collectively, the "Combined Return States").

tax" exception to the add back statute. This exception provides that the "addition shall not be required for any portion of the intangible expenses and costs if . . . [t]he corresponding item of income received by the related member is subject to a tax based on or measured by net income or capital imposed by . . . another state." Code § 58.1-402(B)(8)(a)(1). Kohl's Illinois included the royalties as income in each of its state tax returns. This income was then apportioned and taxed by each of these states. The royalties, in Kohl's view, therefore qualify for the subject-to-tax exception, and Kohl's did not add them back when calculating its Virginia taxable income for the taxable year that ended on January 31, 2009. Kohl's further requested a refund for the royalties it mistakenly added back to its taxable income for the taxable year that ended on January 30, 2010.

In February 2011, the Virginia Department of Taxation audited Kohl's returns for both of the taxable years at issue. The auditor recognized that Kohl's Illinois paid income tax on a portion of the royalties, through the apportionment process, in many of the Separate Return States. The auditor allowed a "partial exception" to the add back statute corresponding to the amount of the royalties that was actually taxed in these states.[4] However, Kohl's Illinois did not pay taxes on most of the royalties, and the auditor required that this untaxed portion be added back to Kohl's taxable income. The Department then issued a Notice of Assessment to Kohl's for the taxable year that ended on January 31, 2009 in the amount of $1,165,318.16 in tax plus $120,682.26 in interest. For the taxable year that ended on January 30, 2012, the Department issued a Notice of Assessment in the amount of $681,582.84 in tax plus $29,466.79 in interest.

Kohl's appealed to the State Tax Commissioner, requesting corrections to both Notices of Assessment. The Commissioner found that the auditor correctly "reduced the royalty add back

_____

[4] These states were Arkansas, Iowa, Louisiana, New Jersey, New Mexico, North Carolina, Oklahoma, and South Carolina.

4

exception to the portion of [Kohl's] royalties paid to [Kohl's Illinois] that corresponds to the portion of [Kohl's Illinois's] income subjected to tax in other states." Accordingly, the Commissioner upheld the assessments.

Kohl's then filed an "Application for Correction of Erroneous Assessment and Refund of Corporation Income Taxes" in the circuit court. Kohl's primarily contended that the royalty payments only needed to be included in Kohl's Illinois's taxable income, regardless of whether they were actually taxed, to fall within the subject-to-tax exception. The Department responded that only the portion of the royalty payments that was actually taxed by other states qualifies for the exception. Kohl's alternatively argued that even if the exception only covers the amount that was actually taxed, the Department's calculation of that amount was incorrect.

The parties submitted a joint stipulation of facts, wherein they agreed that

> it shall not be necessary for Kohl's to put on evidence of the amounts of the [subject-to-tax] exception or the resulting additional [corporate income tax] and interest that follows from [the circuit court's] ruling on the application of [the add back statute]. After [the circuit court's] ruling, the parties will confer and attempt to agree on any additional [corporate income tax] and interest amounts.

Both parties moved for summary judgment, agreeing "that the sole issue for the [circuit court] to decide is the extent to which Kohl's is entitled to the [subject-to-tax] exception to the add back statute." *Kohl's Dep't Stores, Inc. v. Va. Dep't of Taxation*, 91 Va. Cir. 499, 504-05 (2016). The circuit court issued an opinion denying Kohl's motion for summary judgment and granting the Department's. *Id.* at 506. It held that "to fall within the [subject-to-tax] exception, the intangible expenses paid to a related member must not only be subject to a tax in another state, but that tax must actually be imposed." *Id.* at 505. The circuit court's opinion did not address Kohl's alternative argument. *Id.* at 504-06. We granted Kohl's this appeal.

5

II.  Analysis

A.  Applicability of the Subject-To-Tax Exception

As in the circuit court, the primary contention between the parties on appeal is the extent

to which Kohl's is entitled to the subject-to-tax exception of Code § 58.1-402(B)(8)(a)(1).  The

statute provides, in relevant part:

> B.  There shall be added to the extent excluded from federal
> taxable income:
>
> 8.  a. . . . [T]he amount of any intangible expenses and costs
> directly or indirectly paid, accrued, or incurred to, or in
> connection directly or indirectly with one or more direct
> or indirect transactions with one or more related members
> to the extent such expenses and costs were deductible or
> deducted in computing federal taxable income for
> Virginia purposes.  This addition shall not be required for
> any portion of the intangible expenses and costs if one of
> the following applies:
>
> (1) The corresponding item of income received by the
> related member is subject to a tax based on or measured
> by net income or capital imposed by Virginia [or]
> another state . . . .

Code § 58.1-402(B).

Kohl's argues that all of the royalties fall within the subject-to-tax exception because they

were included in the taxable income of Kohl's Illinois.  In its view, if income is included in the

computation of a corporation's taxable income in another state, then it is "subject to a tax based

on or measured by net income."  Code § 58.1-402(B)(8)(a)(1).  The Department responds that

while all of the royalties were included in the taxable income of Kohl's Illinois, a substantial

portion of these royalties was not attributable to any state in which Kohl's Illinois filed its returns

and, as a result, not subject to a tax imposed by another state.  In other words, Kohl's argues that

6

the subject-to-tax exception applies on a "pre-apportionment" basis, while the Department argues that the subject-to-tax exception applies on a "post-apportionment" basis.

In resolving this dispute, we note that "[w]hen a [tax] statute, as written, is clear on its face, this Court will look no further than the plain meaning of the statute's words." *Department of Taxation v. Delta Air Lines, Inc.*, 257 Va. 419, 426, 513 S.E.2d 130, 133 (1999).  The Court's primary objective is to give effect to the legislative intent, which "is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction." *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997).

As stated above, the subject-to-tax exception applies when "[t]he corresponding item of income received by the related member is subject to a tax based on or measured by net income or capital imposed by . . . another state." Code § 58.1-402(B)(8)(a)(1).  It is not clear from this language whether the General Assembly intended the exception to apply on a pre or post apportionment basis.  Notably, the phrase "subject to a tax" is not defined by the Code.  Seeking to provide a definition, Kohl's points out that the term "taxable" is defined as "subject to taxation." *Black's Law Dictionary* 1688 (10th ed. 2014).  From this definition, Kohl's reasons that the royalty payments need only be "taxable" – regardless of whether they are actually taxed – to fall within the subject-to-tax exception.  But this does not settle the issue, for the Due Process and Commerce Clauses of the United States Constitution mandate that only the amount of a corporation's income that is fairly apportionable to a given state is legally subject to that state's income tax. *Container Corp.*, 463 U.S. at 164.[5]

---

[5] Kohl's also attempts to provide a definition of "subject to a tax" by citing to a 1985 Department regulation, which states that

7

In fact, both of the parties' positions find support in the statute's language. Because the royalties were included in Kohl's Illinois's taxable income, they were, to a certain extent, "subject to" the income taxes of other states. At the same time, a substantial amount of the royalties was not apportioned to, and thereby not legally "subject to" the income tax of, any state in which Kohl's Illinois filed a return. Phrased differently, an income tax could only by "imposed by" another state on the post-apportioned amounts of the royalties. Code § 58.1-402(B)(8)(a)(1). This principle is demonstrated in Kohl's 2009 Virginia Income Tax Return, which indicates that less than 4% of Kohl's "taxable income" was "*apportioned* to Virginia," and that only this post-apportioned amount was "*subject to* Virginia Tax." (S.J.A. 002) (emphases added). Thus, the General Assembly's decision to limit the applicability of the subject-to-tax exception to when the income is "subject to" an income tax "imposed by" another state suggests that it intended the exception to apply on a post-apportionment basis. Code § 58.1-402(B)(8)(a)(1).[6]

---

[a] corporation is "subject to" [income tax] . . . if it carries on sufficient business activity within any other state so that the other state has jurisdiction to impose one of the enumerated taxes, whether or not such other state actually imposes one of the enumerated taxes.

23 VAC § 10-120-120. In Kohl's view, this regulation indicates that only the "jurisdiction" to tax is necessary for income to be subject to a tax, regardless of whether that jurisdiction is exercised. However, this regulation defines when a corporation, not income, is subject to a tax. A state's jurisdiction to tax a corporation does not include the authority to tax all of that corporation's income, which is inherently divisible and only taxable to the extent it can be fairly apportioned to the state. *Complete Auto Transit*, 430 U.S. at 279.

[6] The parties stipulated that "[t]he royalties that Kohl's Illinois received from Kohl's were subject to a tax based on or measured by net income or capital in each of the Separate Return States." However, under the Due Process and Commerce Clauses of the United States Constitution, only that income which is fairly apportionable to a state is subject to that state's income taxes. *Container Corp.*, 463 U.S. at 164. The parties cannot avoid application of this legal principle through a stipulation. *Swift & Co. v. Hocking Valley R.R.*, 243 U.S. 281, 289

8

Therefore, looking only at the plain language of the statute, it is doubtful and uncertain whether the General Assembly intended the subject-to-tax exception to apply on a pre or post apportionment basis.[7] *Newberry Station Homeowners Ass'n v. Board of Supervisors*. 285 Va. 604, 614, 740 S.E.2d 548, 553 (2013) (A "statute is ambiguous when its language is capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness or definiteness, particularly where its words have either no definite sense or else a double one." (citation and internal quotation marks omitted)).

The parties offer differing principles of statutory construction to resolve this ambiguity, both of which have a rich and well-established history in the Commonwealth. On the one hand, our "primary objective" when construing a statute is always to "ascertain and give effect to the legislative intent." *Chaffins v. Atlantic Coast Pipeline*, 293 Va. 564, 568, 801 S.E.2d 189, 191 (2017). However, Kohl's notes that statutes imposing taxes are generally construed against the Commonwealth. *See Ford Motor Credit Co. v. Chesterfield*, 281 Va. 321, 334, 707 S.E.2d 311, 318 (2011). This case requires us to determine which of these principles is paramount. Under the facts and circumstances of this case, we conclude that the intention of the legislature is our

_____

(1917) ("If [a] stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative.").

[7] The dissent points to legislation that was proposed in, but not enacted by, the General Assembly in 2010 and 2013. These bills would have amended the subject-to-tax exception to unambiguously apply on a post-apportionment basis. *See* S.B. 407, Va. Gen. Assem. (Reg. Sess. 2010); S.B. 1036, Va. Gen. Assem. (Reg. Sess. 2013). The General Assembly subsequently accomplished this goal through its 2014 and 2016 appropriations acts, which state that the subject-to-tax exception "shall be limited and apply *only to the portion* of such income received by the related member, which *portion is attributed to a state* . . . in which the related member has sufficient nexus to be subject to such taxes." 2014 Acts ch. 2, § 3-5.10; 2016 Acts ch. 780, § 3-5.09 (emphases added). These legislative acts provide examples of how the subject-to-tax exception could be unambiguously worded to apply on a post-apportionment basis. But they do not contradict our conclusion that the version of the statute before us is ambiguous.

9

guiding star.

The principle requiring strict construction of statutes imposing taxes has found general, but not universal, acceptance across the nation. *See, e.g.*, *Knox v. Emerson*, 131 S.W. 972, 973 (Tenn. 1910) ("[T]here is much conflict in the authorities as to whether revenue statutes . . . shall be given a liberal or strict construction." (citing *Mills v. Thurston Co.*, 47 P. 759, 760 (Wash. 1897)). But even when applied, it is often "subject to qualifications according to differing elements and factors." *Atlantic C.L.R. Co. v. Commonwealth*, 193 S.W.2d 749, 752 (Ky. 1946). As one court stated, "[i]t is well settled that tax laws are to be strictly construed against the state. . . . Nevertheless, [they] also must be construed reasonably so that the Legislature's purpose in enacting the statute is not destroyed." *Stryker Corp. v. Director, Div. of Taxation*, 773 A.2d 674, 684 (N.J. 2001) (internal quotation marks omitted)); 3A Norman J. Singer & Shambie Singer, Sutherland's Statutes & Statutory Construction § 66:1, at 9 (7th rev. ed. 2010) (A court should not, in the name of strict construction, "construe revenue legislation so that its underlying purpose is . . . destroyed."); *In re Clark's Estate*, 194 S.W. 54, 57 (Mo. 1917) ("Statutes by which the State taxes the property of the citizen are to be strictly construed. . . . This rule is not, however, to be followed so far and so technically as to defeat the intention of the Legislature.").

As we have repeatedly stated, when "construing a statute [our] paramount inquiry is, what was the intention of the legislature?" *Richmond v. Sutherland*, 114 Va. 688, 691, 77 S.E. 470, 471 (1913). This, our highest objective, does not change simply because we are interpreting a tax statute. *See City of Lynchburg v. English Constr. Co.*, 277 Va. 574, 584, 675 S.E.2d 197, 202 (2009) (noting, in the context of analyzing a tax statute, that "courts should adopt th[e] interpretation that will carry out the legislative intent"). Construing tax statutes in favor of the taxpayer often achieves this objective and acknowledges that for the state to take property from a

10

citizen through taxation, it must have the warrant of law.[8] Yet, this principle is not an absolute

formula that overrides all other canons of interpretation. *Stryker*, 773 A.2d at 684 ("[A]ll the

rules of statutory construction are relevant in the interpretation of revenue measures." (quoting

3A Sutherland, *supra* § 66:3, at 27)). For its strict application in every case would mean that

courts would be prohibited from considering the intention of the legislature, no matter how

convincing and overwhelming the evidence of that intention may be. *Pennsylvania R. Co. v.

Board of Revision of Taxes*, 93 A.2d 679, 683 (Pa. 1953) ("[T]hat tax statutes are to be construed

strictly against the taxing authority" is a principle designed to reach "the correct legislative

intent."). Such an approach abandons our highest objective in favor of the sentiment "that the

government, in demanding its dues, is a tyrant, which, while too powerful to be resisted, may

justifiably be obstructed and defeated by any subtle device or ingenious sophism whatsoever."

Thomas M. Cooley, Taxation § 501, at 1124 (4th ed. 1924).

Thus, when the General Assembly's intent in enacting a tax statute is ascertainable, the

principle requiring strict construction does not prohibit us from giving effect to this intention.

3A Sutherland, *supra*, § 66:2, at 16 ("[A] taxing statute, as with other statutes, must be read as a

whole and the legislative purpose in enacting it must be taken into account in order to

accomplish its goals." (citing *Pacific Co. v. Johnson*, 285 U.S. 480, 495 (1932))). The General

Assembly's intent "is to be 'gathered from the occasion and necessity of the law, . . . the causes

---

[8] Under a similar rationale, the rule of lenity requires us to interpret criminal statutes against the state and in favor of the defendant. But even this rule "is not to be applied where to do so would conflict with the implied or expressed intent of [the legislature]." *Liparota v. United States*, 471 U.S. 419, 427 (1985); *see also Holloman v. Commonwealth*, 221 Va. 196, 198, 269 S.E.2d 356, 357, 358 (1980) (construing Code § 18.2-53.1 in accordance with its "purpose" and "aim[]" to hold that a "BB" gun was a "firearm" under the statute despite the appellant's argument that the rule of lenity required the Court to narrowly define "firearm" to include only those weapons that "expel[] a projectile by force of gunpowder").

11

which moved the Legislature to enact it.'" *Ambrogi v. Koontz*, 224 Va. 381, 386-87, 297 S.E.2d 660, 663 (1982) (quoting *Vicars v. Sayler*, 111 Va. 307, 309, 68 S.E. 988, 989 (1910)). By enacting the add back statute, the Commonwealth joined numerous states[9] with legislation "designed primarily to prevent the deduction of royalties and interest paid to related intangible holding companies." Amdur, *supra*, 11 A.L.R. 6th at 556. Before the General Assembly passed this statute, the Department estimated in its fiscal impact statement that it would raise the Commonwealth's annual tax revenue, specifically by $34 million in 2005. Department of Taxation, 2004 Special Session I, Fiscal Impact Statement for HB 5018. Yet, accepting Kohl's argument would effectively negate the intended operation and undermine this expected revenue. Under a pre-apportionment interpretation, corporations could avoid application of the add back statute by paying royalties to a related member in a state in which its apportionment factor is insignificant. This would resurrect the loophole that the General Assembly intended to close.

Under these circumstances, we will not destroy the General Assembly's plainly ascertainable intention in the name of strict construction. 3A Sutherland, *supra*, § 66:1, at 9; Cooley, *supra*, § 505, at 1125 ("Strict construction [of tax statutes] does not mean such a construction as to defeat the intention of the legislature."). We therefore hold that the subject-to-tax exception applies only to the extent that the royalty payments were actually taxed by another state. That is, the exception applies on a post-apportionment, rather than a pre-apportionment,

---

[9] In addition to Virginia, the following jurisdictions have enacted legislation aimed at closing the IHC loophole: Alabama, Ala. Code § 40-18-35(b); Arkansas, Ark. Code Ann. § 26-51-423(g)(1); Connecticut, Conn. Gen. Stat. § 12-218(c); District of Columbia, D.C. Code § 47-1803.02; Georgia, Ga. Code Ann. § 48-7-28.3; Illinois, 35 Ill. Comp. Stat. 5/203(a)(2); Indiana, Ind. Code § 6-3-2-20; Kentucky, Ky. Rev. Stat. Ann. § 141.205; Maryland, Md. Code Ann., Tax-Gen. § 10-306.1; Massachusetts, Mass. Gen. Laws ch. 63, § 31I; Michigan, Mich. Comp. Laws § 208.1201; Mississippi, Miss. Code Ann. § 27-7-17; New Jersey, N.J. Stat. Ann. § 54:10A-4.4; New York, N.Y. Tax Law § 208; North Carolina, N.C. Gen. Stat. § 105-130.7A; Ohio, Ohio Rev. Code Ann. § 5733.042; South Carolina, S.C. Code Ann. § 12-6-1130; Tennessee, Tenn. Code Ann. § 67-4-2006(b).

12

basis.

B.  Kohl's Alternative Argument

Kohl's alternatively argues that the Department erred in calculating the amount of the royalties that falls within the subject-to-tax exception.  The Department allowed a "partial exception" to the add back statute to the extent that the royalty payments were apportioned and taxed in many of the Separate Return States.  However, Kohl's Illinois's income was also included in Kohl's taxable income calculations in the Combined Return States.  Additionally, Kohl's was required to add the royalties back to its taxable income when calculating its taxable income for Connecticut, Maryland, and Massachusetts, and it added a portion of the royalties back when calculating its taxable income for Georgia and New Jersey (collectively, the "Addback States").  Kohl's argues that to the extent the royalties were apportioned to and taxed by all of the above states, they fall within the subject-to-tax exception.  We agree.

The subject-to-tax exception applies when "[t]he corresponding item of income received by the related member is subject to a tax based on or measured by net income or capital imposed by Virginia [or] another state."  Code § 58.1-402(B)(8)(a)(1).  This statute only requires that the "item of income received by the related member" – in this case, the royalties – be taxed by another state.  It does not require that that the related member be the entity that pays the tax on that "item of income."  *Id.*

Nevertheless, the Department notes that the add back statute only applies to any intangible expenses paid to a "related member," Code § 58.1-402(B)(8)(a), and that the subject-to-tax exception only applies to "[t]he corresponding item of income received *by the related member*."  Code § 58.1-402(B)(8)(1) (emphasis added).  From these provisions, the Department reasons that the Court can only look to Kohl's Illinois's tax returns when determining whether

13

the royalty payments were subject to a tax in another state.  In essence, this argument asserts that for the royalty payments to fall within the subject-to-tax exception, the tax must have been paid by the related member.

Simply, Code § 58.1-402(B)(8)(a)(1) contains no such requirement.  To the extent that the royalties were actually taxed by the Separate Return States, Combined Return States, or Addback States, they fall within the subject-to-tax exception regardless of which entity paid the tax.  The Department should have allowed this portion of the royalties to be excepted from the add back statute.

III.  Conclusion

The circuit court correctly determined that only the portion of the royalties that was actually taxed by another state falls within the subject-to-tax exception.  However, it erred by failing to hold, in accordance with Kohl's alternative argument, that Kohl's Illinois need not be the entity that pays this tax for the exception to apply.  Accordingly, we reverse the circuit court's judgment and remand the matter for a determination of what portion of the royalty payments was actually taxed by another state and, therefore, excepted from the add back statute.

*Reversed and remanded.*

JUSTICE McCLANAHAN, with whom CHIEF JUSTICE LEMONS and JUSTICE KELSEY join, dissenting.

In its original opinion, the majority held that Code § 58.1-402(B)(8)(a)(1) is ambiguous and, citing the principle that the interpretation given the tax statute by the Department of Taxation (the "Department") is entitled to "great weight," resolved the ambiguity in favor of the Department, whose interpretation it deemed as "reasonable."  *Kohl's Dep't Stores, Inc. v. Virginia Dep't of Taxation*, 294 Va. 57, 65-68, 803 S.E.2d 336, 340-42 (2017).  Kohl's filed a petition for rehearing asserting that "the

14

majority opinion incorrectly provided great weight to the Department's interpretation in this case . . . contrary to the express directive of the General Assembly that is codified in Section 58.1-205."[1]  The Court today grants the petition for rehearing,[2] simultaneously issues its revised opinion reaching the same conclusion as it did in its original opinion, but with a new rationale for resolving the ambiguity it believes exists within Code § 58.1-402(B)(8)(a)(1).  Though the majority acknowledges (in a footnote) the issue raised by Kohl's in its petition for rehearing,[3] the majority simply deletes all language from its original opinion regarding the weight it previously afforded to the Department's interpretation.  Furthermore, the majority abandons Virginia's well-settled strict-construction canon resolving ambiguities in tax statutes in favor of the taxpayer to divine the true legislative intent of the statute.

Because I continue to be of the opinion that Code § 58.1-402(B)(8)(a)(1) is unambiguous and plainly does not contain the apportionment calculation adopted by the majority, I dissent from this revised opinion as I did from the original majority opinion.  *See Kohl's Dep't Stores, Inc.,* 294 Va. at 70-75, 803 S.E.2d at 343-46 (McClanahan, J., dissenting).  Even if I believed that Code § 58.1-402(B)(8)(a)(1) is ambiguous, as the majority does, I would not reverse more than a century of *Virginia* law requiring this Court to construe an ambiguous tax statute in favor of the taxpayer.

---

[1] Kohl's specifically relies upon language in Code § 58.1-205(4) stating that in any proceeding commenced under Code § 58.1-1825, "rulings and administrative interpretations other than those described in subdivisions 2 and 3 shall not be admitted into evidence and shall be accorded no weight."

[2] Code § 8.01-675.2 states, in pertinent part: "The Supreme Court, on the petition of a party, shall rehear and review any case decided by such court if one of the justices who decides the case adversely to the petitioner certifies that in his opinion there is good cause for such rehearing."

[3] Kohl's assigned two grounds for rehearing:  (1) That the majority opinion exceeded Code § 58.1-205 by giving great weight to the Department's interpretation; and (2) That qualifying for a safe harbor to an addback provision does not negate the purpose of that provision.  The majority revised its opinion in response to the first ground for rehearing by recharacterizing its deference to the Department's interpretation as a mere consideration.

15

As I stated in my dissent to the original opinion, I disagree with the Court's holding in Part II.A. of its opinion that Code § 58.1-402(B)(8)(a)(1) "applies on a post-apportionment, rather than a pre-apportionment, basis." In my view, the Court has inserted an apportionment calculation into this provision that is not supported by the provision's plain language.

Code § 58.1-402(B)(8)(a)(1) provides that the addition to taxable income of royalties paid to a related member "shall not be required for *any portion* of the intangible expenses and costs *if* . . . [t]he corresponding item of income received by the related member is subject to a tax based on or measured by net income or capital imposed by . . . another state." (Emphases added.) The parties stipulated that "[t]he royalties that Kohl's Illinois received from Kohl's were subject to a tax based on or measured by net income or capital in each of the Separate Return States." Thus, the addition to income was not required "for *any portion*" of the royalties that Kohl's paid to Kohl's Illinois. *Id.* (emphasis added).

Although the majority states "it is doubtful and uncertain whether the General Assembly intended" Code § 58.1-402(B)(8)(a)(1) to apply on a pre-apportionment or post-apportionment basis, this provision contains no apportionment language that would support its application on a post-apportionment basis.[4] The apportionment calculation was introduced into the statute by the Department. In 2007, when the Commissioner issued its first ruling interpreting Code § 58.1-402(B)(8)(a)(1), the Commissioner limited application of the provision "to the portion of the Taxpayer's royalty payments to its [affiliate] that correspond to the portion of the [affiliate's] income subjected to tax in other states, as evidenced by the apportionment percentages shown in the [affiliate's] tax returns filed with other

---

[4] Under the majority's post-apportionment method, Code § 58.1-402(B)(8)(a)(1) applies after the income received by the related member is apportioned and only to the extent such portion is actually taxed in another state.

16

states." Va. Dep't of Taxation, Pub. Doc. 07-153 (Oct. 2, 2007), *available at*

https://www.tax.virginia.gov/laws-rules-decisions/rulings-tax-commissioner/07-153 (last visited March

13, 2018) (see second sentence of the last paragraph of the discussion of Code § 58.1-402(B)(8)). In

limiting the provision's application in this manner, the Commissioner inserted an apportionment

calculation into the provision that it does not contain. Therefore, while the majority has now excised

from its opinion any reliance on the Department's interpretation of the statute, the fact remains that the

majority has credited the Department's interpretation of the statute to create the ambiguity it now

resolves in favor of the Department.

Efforts to codify the Department's interpretation of Code § 58.1-402(B)(8)(a)(1) through

amendment of Code § 58.1-402 have been undertaken ever since the Virginia Tax Commissioner

first issued a ruling imposing the apportionment limitation on the application of this provision.

In 2010, a bill to amend and reenact Code § 58.1-402 was proposed, which would have revised

Code § 58.1-402(B)(8)(a) to provide that the addition to taxable income for royalties paid to a

related member shall not be required "to the extent that" the corresponding item of income

received by the related member is subject to a tax. *See* S.B. 407, Va. Gen. Assem. (Reg. Sess.

2010) (offered January 13, 2010) (stating that "[t]his addition shall not be required for any

portion of the intangible expenses and costs if *to the extent that* one of the following applies. . .")

(deletion indicated by strikethrough text and additions indicated by italicized text). Senate Bill

407 was stricken at the request of its patron.[5] In 2013, a bill to amend and reenact Code § 58.1-

402 was proposed, which would have made the following revision to Code § 58.1-

---

[5] The same amendment was included in budget bills introduced during the 2010 session, *see* H.B. 29, Va. Gen. Assem. (Reg. Sess. 2010); S.B. 29, Va. Gen. Assem. (Reg. Sess. 2010) and H.B. 30, Va. Gen. Assem. (Reg. Sess. 2010); S.B. 30, Va. Gen. Assem. (Reg. Sess. 2010), but was removed prior to enactment.

17

402(B)(8)(a)(1): "This addition shall not be required for any portion of the intangible expenses and costs if one of the following applies *to such portion*: (1) The ~~corresponding~~ item of income *corresponding to such portion* received by the related member is subject to a tax . . ."  S.B. 1036, Va. Gen. Assem. (Reg. Sess. 2013) (offered January 9, 2013) (deletion indicated by strikethrough text and additions indicated by italicized text).  Senate Bill 1036 was also stricken at the request of its patron.

While Code § 58.1-402 has not been amended, the General Assembly enacted budget bills in 2014 and 2016 that include provisions applying the Department's apportionment limitation to Code § 58.1-402(B)(8)(a)(1).  The relevant part of these Acts states:

> *Notwithstanding* the provisions of § 58.1-402(B)(8), Code of Virginia, for taxable years beginning on and after January 1, 2004:
>
> (i) The exception in § 58.1-402(B)(8)(a)(1) for income that is subject to a tax based on or measured by net income or capital imposed by Virginia, another state, or a foreign government *shall be limited and apply only to the portion of such income received by the related member, which portion is attributed to a state or foreign government in which the related member has sufficient nexus to be subject to such taxes.*

2014 Acts ch. 2, § 3-5.10 (effective for the biennium ending June 30, 2016); 2016 Acts ch. 780, § 3-5.09 (effective for the biennium ending June 30, 2018) (emphases added).[6]

"Notwithstanding" is defined as "despite" or "in spite of."  Black's Law Dictionary 1231 (10th ed. 2014).  Thus, the opening clause, "[n]otwithstanding the provisions of § 58.1-402(B)(8),"

---

[6] Although the provisions regarding Code § 58.1-402(B)(8)(a) in these Acts contain retroactive language, the Department does not invoke these provisions but relies solely on Code § 58.1-402(B)(8)(a).  Therefore, the provisions of the 2014 and 2016 budget bills are not at issue in this case.

means that the language that follows imposes an apportionment limitation contrary to the provisions of Code § 58.1-402(B)(8)(a)(1).[7]

In adopting the Department's apportionment limitation on the application of Code § 58.1-402(B)(8)(a)(1), the majority has inserted into this provision language reflected in proposed amendments that have not been enacted and provisions of the 2014 and 2016 budget bills that are not at issue here. As we have held, however, "[c]ourts must not construe the plain language of a statute in a way that adds a requirement that the General Assembly did not expressly include in the statute." *David v. David*, 287 Va. 231, 240, 754 S.E.2d 285, 290 (2014). The ability to avoid the addback statute, which the majority seeks to prevent, "cannot be remedied through judicial construction by imposing [an apportionment] requirement that effectively would add new language to the statute. Any such change to the statute must be a legislative, rather than a judicial, undertaking." *Vaughn, Inc. v. Beck*, 262 Va. 673, 679, 554 S.E.2d 88, 91 (2001). In fact, the provisions contained in the 2014 and 2016 budget bills that impose an apportionment limitation on the application of Code § 58.1-402(B)(8)(a)(1) are just such a change. Code § 58.1-402(B)(8)(a)(1), though, which is the only provision at issue in this case, contains no such language.

---

[7] *See also* Craig D. Bell, Annual Survey of Virginia Law: Taxation, 49 U. Rich. L. Rev. 171, 174 (2014) (noting that the budget bill supplied the language missing from § 58.1-402(B)(8)(a)(1) to justify the Commissioner's construction of the provision, "overc[ame] the Tax Department's failure in the 2013 General Assembly to codify its desired interpretation of [Code § 58.1-402(B)(8)(a)(1)]," and enabled the legislature to "avoid the appropriate tax-writing committees" and "debate over the issues and the implications that typically occur in a public setting").

II.

Even if I agreed with the majority that Code § 58.1-402(B)(8)(a)(1) is ambiguous, which I do not, I would nevertheless resolve any ambiguity in favor of Kohl's.[8]

A.

As I explained in my original dissent, Code § 58.1-402 is a general tax statute and, under Virginia law, any ambiguity must be resolved in favor of the taxpayer.[9] "Statutes imposing taxes must be construed most strongly against the Commonwealth and in favor of the taxpayer. Such enactments should not be extended by implication beyond the clear import of the language used." *Commonwealth v. General Elec. Co.*, 236 Va. 54, 64, 372 S.E.2d 599, 605 (1988) (reciting principle in connection with consideration of Code § 58-151.083 (predecessor to Code § 58.1-446) permitting Department to combine income of affiliated corporations and adjust income tax). "Revenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not therefore to be liberally construed. Hence whenever there is a just doubt, that doubt should absolve the tax payer from his burden." *Montgomery County v. Tallant*, 96 Va.

---

[8] The majority states that "[t]he parties offer differing principles of statutory construction to resolve [the statute's] ambiguity" and "[t]his case requires us to determine which of these principles is paramount." Neither party, however, has sought to have this Court resolve the statute's ambiguity because both parties consistently maintained on brief and at oral argument that Code § 58.1-402(B)(8)(a)(1) is unambiguous.

[9] Code § 58.1-402 contains provisions governing the calculation of Virginia taxable income for the taxation of corporations. Code § 58.1-402(A) states, in pertinent part: "For purposes of this article, Virginia taxable income for a taxable year means the federal taxable income and any other income taxable to the corporation under federal law for such year of a corporation adjusted as provided in [the following] subsections." Code § 58.1-402(B)(8)(a) requires the addition of "the amount of any intangible expenses and costs directly or indirectly paid, accrued, or incurred to . . . one or more related members to the extent such expenses and costs were deductible or deducted in computing federal taxable income for Virginia purposes."

723, 726, 32 S.E. 479, 480 (1899).[10]  Therefore, to the extent there is doubt as to whether Code §

58.1-402(B)(8)(a)(1) applies on a post-apportionment basis, thus requiring the addition to taxable

income of some portion of royalties, that doubt should be resolved in Kohl's favor.

The original majority opinion implicitly rejected this rule of interpretation and resolved

the ambiguity by deferring to the Department's interpretation on the assumption that such

interpretative deference was appropriate.[11]  *See Kohl's Dep't Stores, Inc.,* 294 Va. at 68, 803

S.E.2d at 340.  The revised majority opinion now acknowledges the strict-construction canon

governing ambiguities in tax statutes but nonetheless refuses to apply it for two reasons.  First,

citing cases from Tennessee, Kentucky, New Jersey, and Missouri, the majority concludes that

the Virginia canon of strict construction must give way to a "paramount" goal:  the judicial

discovery of the true "intention of the legislature."[12]  Second, unrestrained by the canon, the

---

[10] *See also Ford Motor Credit Co. v. Chesterfield County*, 281 Va. 321, 334, 707 S.E.2d 311, 318 (2011); *Hampton Nissan Ltd. P'ship v. City of Hampton*, 251 Va. 100, 105, 466 S.E.2d 95, 98 (1996); *Commonwealth Nat. Res., Inc. v. Commonwealth*, 219 Va. 529, 537-38, 248 S.E.2d 791, 796 (1978); *Commonwealth v. Appalachian Elec. Power Co.*, 193 Va. 37, 46, 68 S.E.2d 122, 127 (1951); *Commonwealth v. Virginia Elec. & Power Co.*, 159 Va. 655, 665, 167 S.E. 440, 443 (1933); *Commonwealth v. Hutzler*, 124 Va. 138, 141, 97 S.E. 775, 776 (1919); *Combined Saw & Planer Co. v. Flournoy*, 88 Va. 1029, 1034-35, 14 S.E. 976, 977 (1892); *United States v. Wigglesworth*, 28 F. Cas. 595, 596-97 (C.C.D. Mass. 1842) (No. 16,690) (Story, J.).  *See generally* 3A Norman J. Singer & J.D. Shambie Singer, Sutherland's Statutes and Statutory Construction § 66:1, at 1-13 (7th rev. ed. 2010 & Supp. 2017-2018) (describing how courts have "settled th[is] rule"); J.G. Sutherland, Statutes and Statutory Construction §§ 361-63, at 457-63 (1891) (describing and endorsing the rule).

[11] Inexplicably, the majority did not discuss this rule of interpretation in its original opinion despite my position that any ambiguity must be resolved in the taxpayer's favor.  Having dispensed with its deference to the Department's interpretation, however, the majority for the first time proclaims that "[t]his case requires us to determine" the "paramount rule" for interpretation of tax statutes.

[12] The majority states that "[t]he principle requiring strict construction of statutes imposing taxes has found general, but not universal, acceptance across the nation."  Whether or not this principle has found acceptance in other states across the nation is beside the point since it *has* found acceptance in Virginia.

majority then claims that it can delve into the statutory ambiguity and divine the true legislative intent of the statute. I cannot accept either rationale.

To begin with, the strict-construction canon serves as a limitation on the taxing power itself. Describing "[c]ertain basic principles," we have emphasized that "[t]he power of taxation is exercised by the legislature, 'and an executive officer who seeks to enforce a tax must always be able to put his finger upon the statute which confers such authority.'" *Commonwealth v. General Elec. Co.*, 236 Va. 54, 64, 372 S.E.2d 599, 605 (1988) (quoting *Commonwealth v. P. Lorillard Co.*, 129 Va. 74, 82, 105 S.E. 683, 685 (1921)). It is for this reason that statutes imposing taxes be construed "most strongly" against the government and "not be extended by implication" beyond the statute's clear language. *Id.*

The very danger that the canon warns against is taking place in the majority opinion. The tax statute is being "extended by implication beyond the clear import of the language used." *Id.* Although the majority takes the view that the "plain language of the statute" reasonably supports two contradictory interpretations, the majority nonetheless extends the statute by implication based upon its gut feeling that, it alleges, irrefutably divines the refutable and enigmatic legislative intent. Yet, "the intent of the legislature is not to be derived by intuition, or any process of divination, but from the words used." *Jones v. Rhea*, 130 Va. 345, 372-73, 107 S.E.814, 823-24 (1921). The majority suggests that it must divine this intent because the "guiding star" of judicial interpretation, is "the intention of the legislature." It is of course true that the point of statutory interpretation is to discover legislative intent. Virginia law, however, views the strict-construction canon as the most reliable astronomical chart leading to that star.

22

Without that chart, the choice between two equally plausible interpretations of a statute turns predominately, if not entirely, on the subjective views of the interpreters.[13]

B.

Furthermore, the legislative history relied upon by the majority does not support its interpretation. The stated purpose of Code § 58.1-402(B)(8)(a) was to close a loophole in connection with Delaware holding companies, not corporations for which income is subject to tax. Though the majority initially characterizes the language of the statute as both "doubtful" and "uncertain," it is able to intuit a "plainly ascertainable intention" from a fiscal impact statement. The fiscal impact statement referenced by the majority, Department of Taxation, 2004 Special Session I, Fiscal Impact Statement for H.B. 5018, states that the addback statute "[c]loses certain loopholes related to Delaware holding companies."[14] The legislative summary

---

[13] The majority calls our attention to an analogous canon, the rule of lenity requiring strict construction of ambiguous criminal statutes. Even that rule, the majority reasons, must be set aside from time to time when it would "conflict" with legislative intent. The analogy, however, does not support the majority's conclusion. "The rule of lenity serves only to resolve genuine ambiguities and 'does not abrogate the well recognized canon'" requiring us to interpret a statute according to the intent of the legislature. *Fitzgerald v. Loudoun Cty. Sheriff's Office*, 289 Va. 499, 508 n.3, 771 S.E.2d 858, 862 n.3 (2015) (citations omitted). In other words, the rule of lenity does not apply when the defendant's interpretation is "unreasonably restrictive," *Blake v. Commonwealth*, 288 Va. 375, 386, 764 S.E.2d 105, 110 (2014) (citation omitted), and thus incapable of producing a genuine ambiguity. *See also Holloman v. Commonwealth*, 221 Va. 196, 198, 269 S.E.2d 356, 357 (1980) (per curiam); *Ansell v. Commonwealth*, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979); *Grimes v. Commonwealth*, 62 Va. App. 470, 480, 749 S.E.2d 218, 223 (2013), *aff'd*, 288 Va. 314, 764 S.E.2d 262 (2014).

Here, the majority admits that Kohl's' interpretation is genuinely reasonable, and thus, under the majority's view, the statute could reasonably be read to either impose or not impose the taxes in question. If this were a criminal case requiring us to interpret a criminal statute, the defendant would receive the benefit of the rule of lenity. So, too, in this case, where the majority believes that a genuine ambiguity exists in the statute, Kohl's should likewise receive the benefit of the rule of strict construction. Therefore, the rule of lenity analogy works and, when understood properly, undermines the majority's view.

[14] Citing an estimate of $34 million in expected revenue from the fiscal impact statement, the majority states that accepting Kohl's' argument would "undermine the expected revenue." The fact that

23

accompanying H.B. 5018 similarly states that the bill "[r]equires additions to federal taxable income for certain deductions for intangible and interest expense, but provides certain safe-harbors related to Delaware holding companies." *See* H.B. 5018, Summary as Passed, *available at* https://lis.virginia.gov/cgi-bin/legp604.exe?ses=042&typ=bil&val=hb5018.[15] Thus, the original purpose as stated in the legislative summary and fiscal impact statement accompanying H.B. 5018 reflect the General Assembly's intention to close loopholes related to holding companies for which income is not subject to tax in any state, such as Delaware holding companies.[16] Construing Code § 58.1-402(B)(8)(a)(1) to require the addition to income of royalties paid to a corporation for which income is subject to tax in another state would exceed the stated purpose of the legislation.

The efforts to amend Code § 58.1-402(B)(8)(a)(1) to impose an apportionment limitation on its application reveal that the currently applicable provision contains no such limitation. As discussed in Part I, the General Assembly failed to enact bills proposed during the 2010 and 2013 legislative sessions, both of which included language that would have codified the apportionment limitation adopted by the Department. Budget bills enacted in 2014 and 2016

---

enactment of Code § 58.1-402(B)(8)(a)(1) was expected to result in increased revenue is hardly surprising, but it is pure speculation to intuit the General Assembly's intention to impose an apportionment limitation on Code § 58.1-402(B)(8)(a)(1) based on a figure cited in a fiscal impact statement prepared by the Department.

[15] *See also* Craig D. Bell, Annual Survey of Virginia Law: Taxation, 39 U. Rich. L. rev. 413, 424 (2004) ("In a conscious effort to curtail the benefits of using Delaware holding companies in Virginia, the 2004 General Assembly significantly curtailed the benefits by requiring additions to be made to federal taxable income for certain deductions claimed for intangible property and interest expenses related to Delaware holding companies.")

[16] *See, e.g.,* Del. Code Ann. tit. 30, § 1902(b)(8) (providing an exemption from Delaware income tax for corporations "whose activities within [Delaware] are confined to the maintenance and management of their intangible investments").

contain provisions purporting to place an apportionment limitation on the application of Code § 58.1-402(B)(8)(a)(1). It is reasonable, therefore, to conclude that these efforts were not undertaken in vain, but rather to provide language that would codify the Department's adoption of the apportionment limitation.

III.

In sum, I would hold that Code § 58.1-402(B)(8)(a)(1), by its plain language, does not apply on a post-apportionment basis. Even if there were doubt as to whether the provision contained such a limitation, Virginia statutory construction principles that have existed for more than a century require that we resolve it in favor of Kohl's. For these reasons, I would hold that Kohl's is entitled to a full refund and would, accordingly, reverse the judgment of the circuit court.[17]

---

[17] Because I would hold that Code § 58.1-402(B)(8)(a)(1) does not apply on a post-apportionment basis and that Kohl's is entitled to a full refund, I would not reach the alternative argument made by Kohl's, which is addressed by the Court in Part II.B. of the majority opinion.