PUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **4th** *day of* **June, 2024**.

Dawn Lewis Williams,                                                                                              Appellant,

 against            Record No. 1201-22-2
                          Circuit Court No. CL21000379-00

Commonwealth of Virginia,                                                                                  Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White, and Frucci

On May 14, 2024, the appellee, by the Attorney General of Virginia, filed a petition requesting that the Court set aside the judgment rendered on April 30, 2024, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:      *original order signed by a deputy clerk of the*
          *Court of Appeals of Virginia at the direction*
          *of the Court*

Deputy Clerk

Present:   Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia

PUBLISHED

DAWN LEWIS WILLIAMS                                        OPINION BY
                                                          JUDGE LISA M. LORISH
v.        Record No. 1201-22-2                            APRIL 30, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Richard E. Moore, Judge

Seth R. Carroll (Melisa Azak; Commonwealth Law Group, PLLC,
on briefs), for appellant.

Laura H. Cahill, Assistant Attorney General (Jason S. Miyares,
Attorney General; Charles H. Slemp III, Chief Deputy Attorney
General; Maria N. Wittmann, Deputy Attorney General; Richard
C. Vorhis, Senior Assistant Attorney General, on briefs), for
appellee.


While in the custody of the Virginia Department of Corrections ("VDOC"), Dawn

Williams was injured and sent a notice of tort claim to the Office of the Attorney General. She

then filed an initial complaint seeking relief under the Virginia Tort Claims Act ("VTCA"), but

after she was released from prison, she nonsuited her first action and filed a new complaint. The

VTCA waives the Commonwealth's sovereign immunity under certain circumstances, permitting

plaintiffs to bring tort suits against the Commonwealth. But the VTCA specifically excludes

from recovery "[a]ny claim by an inmate of a state correctional facility" unless the "claimant

verifies under oath, by affidavit, that he has exhausted his remedies" under the VDOC grievance

process. Code § 8.01-195.3. We hold that the VTCA requires a reviewing court to assess

whether a claimant is an inmate when the complaint was filed. If so, the claimant must have

exhausted her remedies. Because the operative complaint here was filed when Williams was no

longer an inmate, the VTCA's exclusion does not apply. We also find that Williams's notices of claim were sufficient under the VTCA. We therefore reverse the circuit court's order sustaining the Commonwealth's plea in bar and dismissing Williams's complaint.

BACKGROUND[1]

On October 11, 2018, while incarcerated at Fluvanna Correctional Center ("Fluvanna"), Williams was scheduled to attend a medical appointment at UVA Health University Hospital ("UVA Hospital"). Williams required handicap-equipped transportation to take her from Fluvanna to the appointment. The VDOC officers assigned to transport Williams informed her that a handicap-equipped van was unavailable and that they would instead use a standard transport van. Because Williams had difficulty safely loading herself into the van while shackled, the officers overseeing her transportation requested, and received, authorization to unshackle her so that she could help pull herself inside. When the van arrived at the hospital, one officer called again to request permission to unshackle Williams so she could help herself out of the van. But because they were running late for the appointment, another officer did not wait. Instead, this officer tried to pull Williams out of the van while she was still shackled. The officer lost her balance, fell down, and pulled Williams down with her. As a result, Williams injured several joints.

In August 2019, Williams filed, *pro se*, a handwritten notice of claim with the Office of the Attorney General indicating that she intended to sue VDOC for causing her injuries. She subsequently retained an attorney, who filed "further notice" of her claim with the Attorney General on October 8, 2019.

---

[1] We recite the facts as pleaded in the complaint. *See Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019).

While still incarcerated, Williams filed her first complaint in the Fluvanna Circuit Court a few months later. She alleged that the Commonwealth was liable for the injuries she sustained while being transported to the hospital and sought relief under the VTCA. She did not file an affidavit stating that she had exhausted her remedies under the VDOC's inmate grievance procedures. In response, the Commonwealth filed a plea in bar asserting sovereign immunity.

Before the court ruled on the pending plea in bar, Williams was released from prison. In July 2020, she nonsuited her original action, and refiled her complaint in the Charlottesville Circuit Court a month later, again seeking recovery under the VTCA. The Commonwealth filed another plea in bar asserting that the VTCA did not waive the Commonwealth's sovereign immunity because Williams asserted a "claim by an inmate" under Code § 8.01-195.3(7) and she had not attached an affidavit stating that she exhausted administrative remedies through the VDOC grievance process. The Commonwealth also argued that her notices of claim failed to meet the statutory requirements of Code § 8.01-195.6(A). The circuit court agreed on both fronts, sustaining the Commonwealth's plea in bar and dismissing the complaint.

Williams timely appeals.

ANALYSIS

Williams asks us to reverse the circuit court's decision to sustain the Commonwealth's plea in bar based on its claim of sovereign immunity. Where, as here, "no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). "The facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (quoting *Niese v. City of Alexandria*, 264 Va. 230, 233 (2002)). To determine whether the Commonwealth

waived sovereign immunity here, we must interpret several sections of the VTCA, a task we take up de novo. *Wright v. Commonwealth*, 278 Va. 754, 759 (2009).

## I. The exhaustion requirement of Code § 8.01-195.3(7)

"The Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees in the absence of an express constitutional or statutory waiver of sovereign immunity." *Billups v. Carter*, 268 Va. 701, 707 (2004). The VTCA generally waives the Commonwealth's sovereign immunity for claims for money "on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. But the VTCA excludes recovery for certain claims, including "claim[s] by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections." Code § 8.01-195.3(7). Initiating the institutional inmate grievance procedure tolls "the time for filing the notice of tort claim . . . during the pendency of the grievance procedure." *Id.* Thus, the VTCA "partially waives sovereign immunity" for "state prisoners" who comply with the exhaustion requirements of Code § 8.01-195.3(7), but it does not waive immunity for claims by inmates who do not. *AlBritton v. Commonwealth*, 299 Va. 392, 399 (2021).

Along with excluding certain claims, the statute imposes procedural requirements on claimants. To assert a "claim cognizable against the Commonwealth," a plaintiff must first file a "notice of claim" with the Director of the Division of Risk Management or the Attorney General; otherwise, her claim "shall be forever barred." Code § 8.01-195.6(A)-(B). The notice of claim must be "a written statement of the nature of the claim" that both describes the "time and place at which the injury occurred" and designates the agency or agencies the plaintiff seeks to hold

- 4 -

liable for the injury. Code § 8.01-195.6(A). The VTCA also requires that the notice of claim be filed "within one year after such cause of action accrued." *Id.*

The specific language that we must interpret today excludes from recovery: "Any claim by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies." Code § 8.01-195.3(7). No party has suggested that we interpret the word "inmate" to mean anything other than what common sense would dictate—that an inmate is someone presently imprisoned in a detention center or in the custody of the VDOC. *See also Inmate*, *Black's Law Dictionary* (11th ed. 2019) (defining inmate as "[a] person confined in a prison, hospital, or similar institution"). But the tougher question is this: when does it matter whether a claimant is an inmate in evaluating the Commonwealth's sovereign immunity defense?

To understand when claims are barred for failure to exhaust administrative remedies, we look to the text and structure of the VTCA. "The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). An appellate court must determine the legislative intent "from the plain meaning of the language used." *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)). "Where bound by the plain meaning of the language used, we are not permitted 'to add or to subtract from the words used in the statute.'" *Coles v. Commonwealth*, 44 Va. App. 549, 557 (2004) (quoting *Posey v. Commonwealth*, 123 Va. 551, 553 (1918)). We also evaluate the language in the context "of the entire statute" because "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)).

Williams asserts that she was not an inmate at the time she filed her most recent complaint and so was not subject to the VTCA's requirement that a "claimant" asserting a "claim by an inmate" must exhaust administrative remedies. Code § 8.01-195.3(7). The Commonwealth urges us to adopt a different interpretation of a "claim by an inmate." In the Commonwealth's view, the claimant's status at the time of *injury*, rather than at the time of filing a *complaint*, controls under the statute. Thus, because Williams sustained her injuries when she was an inmate, the Commonwealth argues that her present complaint asserts "a claim by an inmate" even though she filed it after she was released. On this basis, the Commonwealth argues that her complaint was properly dismissed. Because a cause of action in tort "does not arise until an injury to a plaintiff can be shown," *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 20 (2013), the Commonwealth's position equates the existence of a claim with the accrual of a cause of action.

Along with Williams's complaint theory and the Commonwealth's accrual theory, our dissenting colleague places a third possibility on the table. Black's Law Dictionary defines a "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, *Black's Law Dictionary*, *supra*. As the definition suggests, a "demand for money" may be asserted through a complaint. But a demand for payment could also encompass the written notice of claim that the VTCA requires a claimant provide to the Office of the Attorney General before filing a complaint. Indeed, once a claimant has filed a notice of a claim with the Attorney General or the Division of Risk Management, the Attorney General has the authority to settle those demands before they reach the litigation stage. Code § 8.01-195.5.

Thus, we consider here whether the VTCA's exclusion barring an unexhausted "claim by an inmate" is based on the status of being an "inmate" (1) when a cause of action accrues, (2) when a notice of claim is provided, or (3) when a complaint is filed. Our task is to interpret

- 6 -

what "claim by an inmate" means in the specific context of the exclusion set out in Code § 8.01-195.3(7).

    A. The text and context of "claim by an inmate" in Code § 8.01-195.3(7) show that this section focuses on when litigation formally begins through the filing of a complaint.

We note from the start that the main effect of the sovereign's waiver of immunity is to allow an ordinary citizen to do what is normally prohibited—sue the Commonwealth in a state court. "[A]s a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act." *Hinchey v. Ogden*, 226 Va. 234, 239 (1983). As addressed above, the VTCA waives the Commonwealth's immunity for "claims . . . of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. This waiver applies to suits filed in the Commonwealth's own courts.[2] The "amount of the claim" determines which court has jurisdiction over a plaintiff's claim. For example, general district courts have "exclusive original jurisdiction to hear, determine, and render judgment on any claim against the Commonwealth . . . when the amount of the claim does not exceed $4,500." Code § 8.01-195.4. When the "amount of [a] claim" increases, circuit courts obtain concurrent or exclusive jurisdiction to hear the claim. *Id.* Thus, the waiver of sovereign immunity allows an individual to initiate a civil suit against the Commonwealth, and the amount of money the plaintiff demands determines where the suit is filed.

---

[2] Federal courts that have addressed the issue have concluded that the VTCA does not waive the Commonwealth's Eleventh Amendment immunity from suits filed in federal court. *See McConnell v. Adams*, 829 F.2d 1319 (4th Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *Creed v. Virginia*, 596 F. Supp .2d 930, 934 (E.D. Va. 2009); *Reynolds v. Sheriff, City of Richmond*, 574 F. Supp. 90 (E.D. Va. 1983).

Turning back to Code § 8.01-195.3, this portion of the VTCA describes the claims for which sovereign immunity is waived so that "the Commonwealth shall be liable for claims for money." Then, the statute excludes from its waiver of "liab[ility] for claims for money," "any recovery" based on several types of claims, including "any claim by an inmate" unless the inmate has verified under oath that she has fulfilled certain exhaustion requirements. Code § 8.01-195.3(7). The effect of this exclusion, and the other exclusions in the statute, is to prevent the claimant from holding the Commonwealth "liable" through a lawsuit in the Commonwealth's courts. In other words, in this context, the "claims" excluded from the waiver of immunity refer to claims viable in *litigation*. The web of provisions defining the scope of the Commonwealth's waiver of sovereign immunity, including the notice of claim requirement in Code § 8.01-195.6(A) and the statute of limitations in Code § 8.01-195.7, confirm that when Code § 8.01-195.3 refers to "claims for money" it looks to those claims actually asserted in court during litigation and not during any pre-litigation discussion of potential claims. Each of the exclusions listed in Code § 8.01-195.3, then, should be understood as setting out the circumstances under which the Commonwealth does not waive its sovereign immunity, with the effect of preventing certain *lawsuits* from going forward.

That Code § 8.01-195.3 deals with the viability of claims appearing during litigation is supported by the specific language of section (7), which bars "any recovery" based on "[a]ny claim by an inmate of a state correctional facility . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies." The natural reading is that an affidavit is filed by the "claimant" with the complaint, which initiates litigation against the Commonwealth. While an inmate may have a right to make a claim for recovery before the complaint is ever filed, the exclusion in Code § 8.01-195.3(7) focuses on when an inmate brings that claim to a court. It is only once the complaint is filed that a court evaluates whether the claimant is an inmate, and thus

- 8 -

whether an affidavit is needed to waive the Commonwealth's sovereign immunity and allow the claimant a "recovery" at law. *Cf. Massenburg*, 298 Va. at 221 (noting that a court may grant a plea in bar and dismiss an action based on sovereign immunity when underlying facts are uncontested). It is also telling that Code § 8.01-195.3(7) does not state that the affidavit must be filed at the point the cause of action accrues, or when a notice of claim is filed. The language of this particular statute plainly affixes the temporal focus of "claim by an inmate" to the time the complaint is filed.

Beyond the exclusions listed in Code § 8.01-195.3, there are several other sections of the VTCA that bar "claim[s]" against the Commonwealth unless the claimant has fulfilled certain requirements. Under Code § 8.01-195.7, "[e]very claim cognizable against the Commonwealth . . . shall be forever barred, unless within one year after the cause of action accrues to the claimant the notice of claim required by § 8.01-195.6 is properly filed." Further, "[a]ll claims against the Commonwealth . . . shall be forever barred unless such action is commenced within 18 months of the filing of the notice of claim, or within two years after the cause of action accrues." Code § 8.01-195.7. Finally, an otherwise cognizable claim shall also "be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim," including details about the injury. Code § 8.01-195.6(A). A claimant's failure to comply with these requirements bars litigation against the Commonwealth. A reviewing court determines whether a claimant has complied with this requirement only when a claim reaches that court, which happens to be the point at which the complaint is filed. The bar to recovery in Code § 8.01-195.3 based on the failure of an inmate to attach an affidavit verifying that she has exhausted her administrative remedies is no different from the other hurdles to litigation in the VTCA—it too is a prerequisite to the Commonwealth's waiver of

- 9 -

sovereign immunity. It follows that a court must evaluate the status of incarceration, which, in turn, affects whether a claimant must file the affidavit, at the time the complaint is filed.

Taking a step back, before concluding, we find that interpreting "claims by an inmate" to focus on the status of the claimant at the time the complaint is filed is the only way to make sense of the way the sovereign immunity provisions of the VTCA repeatedly differentiate between when a "cause of action accrues," the filing of a "notice of claim," and the "claim" itself. *See* Code § 8.01-195.6 (barring "claims" unless the claimant "has filed" a notice of the claim "within one year after such cause of action accrued"); Code § 8.01-195.7 ("All *claims* against the Commonwealth . . . shall be forever barred unless such action is commenced within 18 months of the filing of the *notice of claim*, or within two years after the *cause of action accrues*." (emphases added)). For a claim to survive the Commonwealth's sovereign immunity defense, the VTCA requires a series of events to occur in a particular order: a cause of action accrues, a notice of claim is filed, and then a claim is made in court. Without following the first two steps of this process, all claims "shall be forever barred" in the *future*. When it comes to sovereign immunity, the VTCA targets the time an action is filed, and so it is then that a court must evaluate a claimant's compliance with all these provisions. And if that claimant is an inmate at the time of filing, that includes complying with the grievance procedure.

B. The Commonwealth's suggestion that "claim by an inmate" focuses on when the cause of action accrued clashes with the text of the VTCA.

The Commonwealth argues that a "claim" is "the occurrence of an aggregate set of facts giving rise to a potential right to recover recognized by law," which is essentially the accrual of the cause of action. While this is a theoretically plausible definition of claim, it is not how the General Assembly used the term in Code § 8.01-195.3(7). First, as we have said, the VTCA repeatedly distinguishes between the accrual of the cause of action and when a "claimant" initiates a claim by filing a lawsuit. This suggests that the accrual of the cause of action is

- 10 -

distinct from the "claim" itself.  Additionally, the exclusion applies to "claim[s]" made "by" an inmate, which suggests that a claim is a demand or request of some sort rather than a set of facts that "occur[s]."  In plain speech, the "occurrence of a set of facts" or the occurrence of a particular injury, cannot be made "by" someone.  Instead, the *complaint* is the demand for relief that is filed "by" the inmate along with the affidavit verifying that the inmate has exhausted her administrative remedies.  *See AlBritton*, 299 Va. at 398 ("[The inmate's] complaint included an affidavit stating that he had 'exhausted the administrative remedies of the adult institutional inmate grievance procedure to the extent required . . . .'").

The Commonwealth's primary argument to the contrary is not based in text, but policy.  The Commonwealth argues that the exhaustion requirement is not intended to create a barrier to filing a claim in court, and relies on the premise that exhaustion requirements "protect[] 'administrative agency authority' and 'promote[] efficiency' by encouraging disputes to be resolved 'quickly and economically' during the prelitigation administrative process."  *Id.* at 399-400 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  While our Supreme Court has explained that these policy rationales support the General Assembly's decision to include an exhaustion requirement, those policy rationales do not permit us to impose that requirement where the General Assembly has not manifested an intention to do so.  When public policy arguments "contravene clear statutory language," they "should be addressed to the legislature, not the courts."  *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 474 n.12 (2022).  The clear language carries the day here.

Rewriting the statute to require a former inmate—someone who is no longer in the custody of VDOC—to have exhausted administrative remedies before suing under the VTCA would lead to the odd result that the word "inmate" would apply to any individual who had ever

- 11 -

been detained in the VDOC, rather than just those who are currently detained.[3]  That would

include individuals released from custody before the grievance process can be started, or

completed.[4]  But "an individual would necessarily need to be confined in order to take advantage

of administrative remedies offered by a state or local correctional facility."  *Lucas v. Woody*, 287

Va. 354, 361 (2014).  Interpreting Code § 8.01-243.2, a statute outside the VTCA that imposes

limitations on personal actions relating to conditions of confinement in local correctional

facilities, the Supreme Court explained that someone cannot exhaust her administrative remedies

unless she is incarcerated and that it matters whether she has exhausted her remedies before the

"filing [of] a personal action" in court, not at the time the cause of action accrues.  *Id.* at 361,

363.  Thus, consistent with the Supreme Court's interpretation of Code § 8.01-243.2, exhaustion

---

[3] *See Page v. Torrey*, 201 F.3d 1136, 1139-40, 1139 n.5 (9th Cir. 2000) (holding that "only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 28 U.S.C. § 1915 and 42 U.S.C. § 1997e," and noting that reading the statute to include individuals who are "currently detained and who *have in the past been* accused of, convicted of, or sentenced for a criminal offense," rather than merely those who are currently detained, "produces an absurd result").

[4] The length of time to complete the grievance procedure is significant enough that the General Assembly included a provision tolling the one-year period of time to file a written notice of claim during the pendency of the grievance procedure.  The Virginia Department of Corrections Operating Procedure 866.1 outlines the Offender Grievance Procedure that applies to all units operated by the Virginia Department of Corrections.  *See* Virginia Department of Corrections Operating Procedure 866.1: Offender Grievance Procedure (Jan. 1, 2021), https://perma.cc/V9H9-YDDS. There are many phases of the grievance process, including the informal verbal complaint process, the submission of a written complaint, and the filing of a "regular grievance."  *Id.* § I(D), at 4-5.  Considering all the relevant time periods for submission and staff response, as well as allowable continuances, "[t]he total time allowed from initiation of a complaint to resolution through the regular grievance process is 180 days including authorized continuances."  *Id.* § III(F)(2)(a), at 10.  We do not think the General Assembly intended to exclude anyone serving a shorter sentence from being able to sue the Commonwealth for mistreatment during a period of incarceration.

requirements do not apply to former inmates, and we evaluate whether an inmate has satisfied such requirements at the time of filing the complaint.[5]

Finally, the Commonwealth's interpretation would require us to rewrite "claim by an inmate" to instead state, "claim arising out of a period of confinement" or "claim based on an occurrence during a period of confinement." The General Assembly knew how to cast a wider net of exclusions and did so in the surrounding subsections of Code § 8.01-195.3. For example, the VTCA excludes "[a]ny claim *arising out of* the institution or prosecution of any judicial or administrative proceeding," Code § 8.01-195.3(6) (emphasis added), and claims "*based upon* an act or omission of an officer, agent or employee of any agency of government in the execution of a lawful order of any court," Code § 8.01-195.3(4) (emphasis added). The language in Code § 8.01-195.3(7) is conspicuously narrow by comparison. What is more, as discussed above, the General Assembly did address claims "relating to" a current, or former, period of incarceration in

_____

[5] While *Lucas* aids our understanding of when a court evaluates exhaustion requirements, we acknowledge that *Lucas* came to a much different conclusion in finding that the statute of limitations set out in Code § 8.01-243.2 applies even to those who have been released from incarceration. This statute, however, is distinguishable from Code § 8.01-195.3(7). For one, the statute lacks the "claim by an inmate" language. For another, the *Lucas* Court reached its conclusion in part because the Court was concerned about applying two different statutes of limitations to the same cause of action, 387 Va. at 362, something that is not an issue for the VTCA because the VTCA is "self-contained, incorporating its own statute of limitations, which likewise is self-contained," *Bing v. Haywood*, 283 Va. 381, 386 (2012) (quoting *Ogunde v. Commonwealth*, 271 Va. 639, 643-44 (2006)). When an inmate brings an action pursuant to the VTCA, even when that action is related to her conditions of confinement, the VTCA's statute of limitations applies. *Bing*, 283 Va. at 386 (citing *Ogunde*, 271 Va. at 643-44). This makes sense, as statutes of limitations ordinarily run from the date of injury, and do not fluctuate depending on the status of a claimant. *Lucas*, 387 Va. at 362. In contrast, procedural prerequisites to filing a lawsuit, such as a claimant's "verifi[cation] under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections" are logically and temporally focused on the circumstances that exist at the time of the filing of the lawsuit, including the status of the claimant. Finally, we note that the Supreme Court considered Code § 8.01-243.2's reference to "such person" to be ambiguous in terms of whether it referred merely to the person bringing a lawsuit relating to conditions of confinement or whether it also incorporated the condition that the person be incarcerated. *Id.* at 361-62. This case presents no such textual ambiguity and does not involve an issue of incorporation by reference.

- 13 -

Code § 8.01-243.2, which sets out the statute of limitations that applies to prisoners bringing cases that accrued for "any personal action relating to the conditions of [their] confinement." While the General Assembly knew how to exclude claims by inmates relating to the conditions of incarceration, it chose not to do so in Code § 8.01-195.3(7). *See Chenevert v. Commonwealth*, 72 Va. App. 47, 57 (2020) (The examining court "assume[s] . . . the legislature chose, with care, the words it used when it enacted the relevant statute." (second alteration in original) (quoting *Coles v. Commonwealth*, 44 Va. App. 549, 557-58 (2004))).

To wrap up, we cannot read into the statute words that are not supported by the full context of the statute, or legislative intent, and so we cannot accept the Commonwealth's position.

C. The dissent's argument that a "claim by an inmate" occurs when a notice of claim is filed is unworkable given the text of Code § 8.01-195.3(7) and the rest of the VTCA's sovereign immunity provisions.

The dissent argues that we should interpret "claim" using its ordinary meaning and that under that meaning, a claim exists well before a complaint is filed. We agree that the word "claim" can generally mean a demand for money that exists, or is made, before litigation—and we also recognize that some parts of the VTCA arguably use the word that way.[6] But we must give the undefined phrase, "claim by an inmate" its "ordinary meaning, *given the context in which it is used*." *Taylor v. Commonwealth*, 298 Va. 336, 342 (2020) (emphasis added). That

---

[6] The dissent primarily points to Code § 8.01-195.5 which sets out the Attorney General's "authority . . . to compromise and settle claims," and the fact that Code § 8.01-195.7 states that a lawsuit may only proceed "upon the denial of the claim by the Attorney General," or the expiration of "six months from the date of filing the notice of claim." We agree that the Attorney General has the authority to settle a claim before it is asserted in litigation and that the purpose of the notice requirement is to allow the Commonwealth to "investigate and evaluate that claim." *Bates v. Commonwealth*, 267 Va. 387, 394 (2004). But there are no questions about sovereign immunity in this pre-litigation stage. The point at which it matters whether the Commonwealth has waived sovereign immunity is at the litigation stage.

context is Code § 8.01-195.3(7), which outlines the parameters for when the Commonwealth waives its sovereign immunity to allow claims to proceed *in court*.

Our interpretation of "claim by an inmate" in this portion of the VTCA tracks with the other sections of the VTCA relevant to the Commonwealth's sovereign immunity, as discussed above. *See, e.g.*, Code § 8.01-195.7 ("Every claim cognizable against the Commonwealth . . . shall be forever barred, unless within one year after the cause of action accrues to the claimant the notice of claim required by § 8.01-195.6 is properly filed."); Code § 8.01-195.6(A) (An otherwise cognizable "claim" shall also "be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim," including details about the injury.). In contrast, the dissent's proposed interpretation of "claim by an inmate" is unworkable given the three distinct stages the VTCA requires for a suit to fall within the Commonwealth's waiver of sovereign immunity: (1) a cause of action accrues, (2) a notice of claim is filed, and (3) a claim may be cognizable in litigation against the Commonwealth.

Under the dissent's proposed interpretation of "claim by an inmate," a court would have to evaluate whether a purported claimant possessed a viable "claim" prior to, or at the same time as, the filing of the notice of claim. The "claim" would then exist simultaneously with the "notice of claim" in which case the VTCA would not need to state that a qualifying "claim" shall "be forever barred" without the filing of a written statement of the nature of the claim. Code § 8.01-195.6(A). Instead, the claim would simply not exist until notice was filed with the appropriate office. But the statute does not read this way—indeed, it distinguishes clearly between the claim itself, which is barred if no *prior* notice of claim is filed, and the filing of the notice of claim. *See Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 570 (2017) (noting that courts must avoid interpreting a statute in a way that leads to "absurd results," or "situations in which the law would be internally inconsistent or otherwise incapable of operation").

Finally, the dissent's proposed interpretation is unmanageable textually. We recognize that the notice of claim is a "written statement of the nature of the claim." And we must give effect to the phrase "nature of," which the text tells us describes the features of the claim, including "the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable," not a "demand" for money or an "assert[ion] of a right" to a particular remedy. Code § 8.01-195.6(A). The dissent would read "nature of" out of the statute altogether, something we are discouraged from doing. *See City of Richmond v. Va. Elec. & Power Co.*, 292 Va. 70, 75 (2016) ("[E]very act of the legislature should be read so as to give reasonable effect to every word." (quoting *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 483 (2008))).

This interpretation also runs into trouble because the full text of Code § 8.01-195.3(7) excludes any "*claim* by an inmate . . . unless the *claimant* verifies under oath, by affidavit, that he has exhausted his remedies . . . ." (Emphases added). If a claimant is the person making the claim, the dissent's reading seems to require the claimant to verify under oath, by affidavit, that he has exhausted his remedies at the time the written statement of the nature of the claim is filed. But under the VTCA, the affidavit is filed with the complaint. *See AlBritton*, 299 Va. at 398 ("[The inmate's] complaint included an affidavit stating that he had 'exhausted the administrative remedies of the adult institutional inmate grievance procedure to the extent required . . . .'").

In conclusion, we hold that a "claim by an inmate" under the VTCA is a complaint, or the initiation of a lawsuit, asserted by someone who is currently under the custody and control of a state correctional facility. When Williams filed her most recent complaint in Charlottesville Circuit Court, she was no longer incarcerated. Thus, she did not assert "a claim by an inmate," and was not required to "verif[y] under oath, by affidavit that that [s]he has exhausted [her]

- 16 -

remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections." Code § 8.01-195.3(7).[7]

Before moving on, we briefly note that the effect of our holding today on the applicability of the exhaustion requirement is only marginally greater than the effect of the dissent's alternative interpretation. Under the dissent's reading of Code § 8.01-195.3(7), any person who is injured while incarcerated and has less than one year remaining to serve on their sentence no longer needs to exhaust their administrative remedies. Consistent with Code § 8.01-195.6(A), that person has one year to submit a notice of claim to the Attorney General, and may do so after they are released. At this point, the person is no longer an inmate, and, as the dissent sees it, is not subject to the exhaustion requirement. The most recent publicly available data from the Virginia Criminal Sentencing Commission reveals that *over half* of the defendants sentenced to any period of incarceration in Virginia receive a sentence of one year or less of incarceration.[8] Under the dissent's interpretation, unless these individuals are serving for one year exactly, and are injured on day one, they may forgo filing their notice of claim until they are released, and in so doing, avoid the VTCA requirement that "inmates" exhaust their administrative remedies. As

---

[7] We are reminded that "the nonsuit privilege cannot be denied because a claimant has surmised the probable outcome of the litigation and has avoided an unfavorable judgment by taking a nonsuit." *Clark v. Clark*, 11 Va. App. 286, 294 (1990). Similarly, we do not change our construction of the statute simply because a claimant may use pleading rules for their own benefit. *Id.* at 293-94 (refusing to broaden the scope of Code § 8.01-243.2 to include nonsuits in foreign jurisdictions merely because plaintiff exercised his right to a nonsuit in a foreign country and again in Virginia, even though such a construction permits "strategic forum shopping").

[8] *See* Virginia Criminal Sentencing Commission Dashboard Data FY18-FY20 (Apr. 16, 2024), https://perma.cc/8JJF-489H. The disposition summary section of the Dashboard states that for Fiscal Years 2018 through 2020, 30.2% of defendants were sentenced to no period of incarceration, 33.8% were sentenced to prison, and 36% were sentenced to jail. As the first ReadMe tab of the file explains, a sentence to jail is "up to 12 months," whereas a sentence to prison is "greater than 12 months."

- 17 -

can anyone who received a longer sentence but was injured with less than a year remaining to serve.[9]

Compared to the dissent's interpretation, our conclusion that a "claim by an inmate" refers to when a complaint is filed only marginally increases the group of inmates who are effectively exempted from the VTCA's exhaustion requirement to include those who sustain injuries during their last 12 to 24 months in prison. This is because all claims under the VTCA must be filed within two years of the day the cause of action accrues, subject to tolling not relevant here. Code § 8.01-195.7. In other words, an inmate who is injured while having at least two years and one day left to serve would still be an inmate at the time the complaint was filed, and would be required under Code § 8.01-195.3(7) to file an affidavit verifying that they have exhausted their remedies.

Our primary duty is to interpret the meaning of the statute based on its text. "[W]e ask 'not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said.'" *Vasquez v. Dotson*, ___ Va ___, ___ (Apr. 18, 2024) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). Because the statute says that former inmates who file a complaint under the VTCA are not subject to the VTCA's exhaustion requirement, that is what the statute means. Interpreting the statute this way does not create an unworkable system—nor is it absurd.[10] *Cf.*

___

[9] We also observe that earned sentence credit under Code § 53.1-202.3 means that many inmates with sentences of up to 18 months will actually also serve less than 1 year, and thus be similarly able to forgo the exhaustion requirement.

[10] In fact, the Federal Circuits are uniform in interpreting the exhaustion requirement of the Federal Prison Litigation Reform Act (PLRA) the same way. The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "In light of the PLRA's plain language . . . a plaintiff who seeks to bring suit about prison life after he has

*Commonwealth v. Doe*, 278 Va. 223, 230 (2009) ("[A] court must avoid any literal interpretation of a statute that would lead to absurd results."). "[G]iven our commitment to 'neutral principles of interpretation,' we are not 'free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal.'" *Vasquez*, ___ Va. at ___ (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022)). If the General Assembly prefers a different system, then it is for the General Assembly, and not this Court, to amend the statute accordingly.[11]

## II. The sufficiency of the notice of claim

As discussed above, all litigants asserting claims under the VTCA must clear the procedural hurdle of filing a "notice of claim." Code § 8.01-195.6. Even though Williams was

---

been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit." *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005). *See also, e.g.*, *Bargher v. White*, 928 F.3d 439, 447-48 (5th Cir. 2019) (explaining that the PLRA's "plain language" would require a court to dismiss the action of a current inmate who fails to comply with such requirements, but would not bind someone who files or "refiles" their complaint upon release from prison); *Cofield v. Bowser*, 247 Fed. Appx. 413, 414 (4th Cir. 2007) (per curiam) (same); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (en banc) ("[Plaintiff] was not subject to the PLRA's exhaustion requirement because he was not a prisoner or otherwise incarcerated when he filed his complaint."); *Witzke v. Female*, 376 F.3d 744, 750 (7th Cir. 2004) (same); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (same); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (same); *Page*, 201 F.3d at 1140 (same); *Greig v. Goord*, 169 F.3d 167 (2d Cir. 1999) (per curiam). The Federal Circuit courts are split, however, on the PLRA's use of the word "brought" and the question of "whether a prisoner who fails to comply with that exhaustion requirement may cure the defect by filing an amended or supplemental complaint after his release." *Wexford Health v. Garrett*, 140 S. Ct. 1611, 1611-12 (2020) (Thomas, J., dissenting from denial of certiorari) (identifying circuit split).

[11] As discussed above, the General Assembly did require exhaustion for any individual bringing actions related to the conditions of their confinement in Code § 8.01-243.2, but our Supreme Court has held that this statute does not apply to the VTCA, which is self-contained. *See Ogunde*, 271 Va. 639. In the more than 15 years following the decision in *Ogunde*, the General Assembly has not amended the relevant statutes to indicate that these same requirements should in fact apply to claims brought under the VTCA.

not required to exhaust her administrative remedies under the grievance procedures of VDOC, she needed to file a notice of claim that complies with Code § 8.01-195.6.

The notice of claim requirement is a condition precedent to maintaining a cause of action against the Commonwealth. Relevant here, the notice must include two things: "(1) the time and place at which the injury allegedly occurred and (2) the agency or agencies allegedly liable." *Halberstam v. Commonwealth*, 251 Va. 248, 251 (1996). The Commonwealth will not be held to have waived sovereign immunity unless each element is stated with specificity. *Id.* That is because, without "explicit notice in writing of the time and place of an accident," "the likelihood of prompt attention to the matter to protect the interests of the [Commonwealth] and the public is materially diminished." *Bates v. Commonwealth*, 267 Va. 387, 392 (2004) (alteration in original) (quoting *Halberstam*, 251 Va. at 252).

Our Supreme Court has explained that a notice is sufficient under the VTCA if it allows for the "reasonable identification" of the place of injury such that the Commonwealth "is in a position to investigate and evaluate that claim." *Id.* at 394. Reasonableness is not a bright-line test; it depends on the allegations specific to the case. *Id.* In *Halberstam*, for example, the plaintiff who fell in a parking lot at George Mason University (GMU) sent a letter to the Director of the Division of Risk Management stating that "a pothole or eroded area in the asphalt of the [GMU] parking lot" caused her to "fall and injure herself." *Halberstam*, 251 Va. at 250. Because her notice "[did] not specify the location of the injury" beyond noting that it occurred in the "school parking lot" of GMU, and because GMU has several parking lots, *id.* at 251, she failed to describe a location "reasonably calculated" to give the Commonwealth adequate notice under the VTCA, *Bates*, 267 Va. at 394.

Unlike the plaintiff in *Halberstam*, the plaintiff in *Bates* was held to have provided a notice of claim that was sufficient to waive the Commonwealth's sovereign immunity under the

VTCA.  Bates mailed a notice of claim to the Attorney General of Virginia that designated the place of injury as the "University of Virginia Health Sciences Center, Charlottesville, Virginia." *Bates*, 267 Va. at 390.  The Court held that because there was "only one University of Virginia Medical Center in Charlottesville," her notice of claim reasonably identified the location of injury, and did not need to include the precise "floor or room." *Id.* at 394-95.  Thus, in *Bates*, "reasonable compliance with the requirements of the [VTCA], not perfect compliance, was sufficient to invoke [the Commonwealth's] statutory waiver of sovereign immunity." *Billups*, 268 Va. at 710.

Williams sent two notices of claim to the Office of the Attorney General.  She sent a handwritten letter on August 20, 2019, which stated that she intended to file a claim "regarding an incident where [she] was hurt during transportation to UVA hospital by corrections officers at Fluvanna Correctional Center."  She stated that the "Department of Corrections [we]re at fault" because "upon arriving at the hosp[ital], [she] was dropped backwards while still handcuffed and shackled."  According to that notice, the incident occurred on October 10, 2018.  The second notice of claim submitted by Williams' counsel on October 8, 2019 served as "further notice" that Williams was pursuing a claim for "injuries sustained by [] Williams while incarcerated at the Fluvanna Correctional Center" and that "on or about" October 10, 2018, "Williams, while at the Fluvanna Correctional Center, was pulled backwards out of a transport van in handcuffs and was dropped to the ground."  The notice alleges that the personnel were reckless in causing her to fall and states the intention to seek compensation for her injuries.

The Commonwealth argues that the notices fail to sufficiently identify both the time and place of the injury.  Interpreting "time" to require an hour and minute, the Commonwealth says neither notice states the time.  As for "place," the Commonwealth relies on an alleged discrepancy between the two notices.  While the first notice stated that the incident occurred

- 21 -

during "transportation to UVA hospital by corrections officers" and "upon arriving" at the UVA Hospital, the Commonwealth reads the second notice to state that the injury occurred when Williams was "pulled backwards out of a transport van" at the Fluvanna Correctional Center.

The Commonwealth has cited no precedent to support its interpretation of "time" as requiring an hour and minute, versus a date. While "time" could mean the precise *second* something occurred, it can also refer more generally to when something took place. In keeping with our Supreme Court's determination that "reasonable compliance" with the VTCA's notice provision is enough to invoke the waiver of the Commonwealth's immunity, we find that identifying a date was sufficient here to meet this requirement and allow the agency to investigate the underlying incident and respond to the notice of claim. *Billups*, 268 Va. at 710.[12]

We also find that Williams described the place of the injury with enough specificity to pass muster under Code § 8.01-195.6. Both notices state that the place of injury was a VDOC transport van. Williams's notices described the type of vehicle (a transport van that was not handicap-equipped), the owner of the vehicle (VDOC), the operators of the vehicle (VDOC officers), and the location of the vehicle before transporting Williams (Fluvanna). The first notice specifies that the injury occurred when officers tried to remove her from the vehicle upon arriving at UVA Hospital. While it is possible to read the second notice to say the injury occurred at Fluvanna, as the Commonwealth does, it is just as possible to read that notice as

---

[12] Other courts have reached the same conclusion. *See, e.g.*, *Fort Wayne v. Bender*, 105 N.E. 949, 950-51 (Ind. Ct. App. 1914) (explaining that the "time of injury" does not "require a particular statement as to whether the accident occurred in the forenoon, or in the afternoon, or in the evening of a given day," or "any statement as to the hour or the minute of the day upon which the injury occurred," but "reasonable certainty requires . . . the date of the injury"); *Lilly v. Woodstock*, 22 A. 40, 42 (Conn. 1890) ("As to the time when the injury was sustained, we see no basis for the claim that naming the correct day is not a sufficient compliance with the letter and the spirit of the statute, though the hour of the day is not named."); *Nova v. Town of Hamden*, No. CV-22-6126940-S, 2023 Conn. Super. LEXIS 723, at *5 n.5 (May 23, 2023) (collecting Connecticut Superior Court cases finding that a failure to include the time of day in a notice of claim is not a fatal defect).

simply stating that Williams was an inmate at Fluvanna at the time the injury occurred, not that the fall from the transport van took place while the van was at Fluvanna.

Unlike the notice in *Halberstam*, designating the "place" of injury as an unidentified parking lot among many possible parking lots, the notices here were specific—the injury occurred while Williams was being removed from a transport van that went between Fluvanna and UVA Hospital. Furthermore, the injury here occurred in a vehicle, a means of conveyance. If Williams had fallen while the van was still moving, the VTCA would not require her to identify the mile marker of where that fall took place. Only one transport van took Williams from Fluvanna to UVA Hospital "on or about October 10." Williams provided enough detail to "reasonably identify" the location of her injury as the non-handicap-equipped transport van into which she was loaded such that the Commonwealth could respond to and investigate her allegations of negligence. *Bates*, 267 Va. at 394.

We hold that circuit court erred in sustaining the Commonwealth's plea in bar of sovereign immunity on the ground that Williams's notices of claims were defective.[13]

CONCLUSION

Because Williams was not an inmate when she filed the complaint, she was not required to file an affidavit stating that she had exhausted her administrative remedies. And her notices of claim complied with the VTCA. Thus, we reverse the decision of the circuit court dismissing her complaint and remand for further proceedings.

*Reversed and remanded.*

---

[13] Because we find that her notices are sufficient, we need not consider whether the Commonwealth had actual knowledge of the incident and injury under Code § 8.01-195.6(A).

AtLee, J., dissenting.

Code § 8.01-195.3(7) excludes from the VTCA's waiver of sovereign immunity "[a]ny claim by an inmate of a state correctional facility . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections."  Because I would find that the claim is made when the claimant files the notice of claim, I would affirm the decision of the circuit court.[14]  Therefore, I respectfully dissent.

The Supreme Court has repeatedly held that "the doctrine of sovereign immunity is alive and well in Virginia."  *Phelan v. Commonwealth*, 291 Va. 192, 195 (2016) (quoting *Niese v. City of Alexandria*, 264 Va. 230, 238 (2002)).  Unless there is an express statutory or constitutional provision waiving sovereign immunity, "the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees."  *Id.* (quoting *Melanson v. Commonwealth*, 261 Va. 178, 181 (2001)).  Through the VTCA, "the General Assembly has provided an 'express but limited waiver of the Commonwealth's immunity from tort claims.'"  *Id.* (quoting *Melanson*, 261 Va. at 181).  The VTCA is "in derogation of common law, and, therefore, its limited waiver of immunity must be strictly construed."  *Melanson*, 261 Va. at 181.

The VTCA waives the Commonwealth's immunity for claims of money "on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment."  Code § 8.01-195.3.  But it excludes recovery for "claim[s] by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the

---

[14] Because I would find that Williams did not fulfill the exhaustion requirement, I would not reach the issue of whether Williams's notices of claim were legally sufficient.

Department of Corrections."[15]  Code § 8.01-195.3(7).  The majority finds that the relevant time for evaluating a claimant's status is at the time the complaint is filed.  I would find that the plain language of the VTCA and the ordinary meaning of the word "claim" require us to find that the claim is made at the time the claimant provides the notice of claim to the Commonwealth.

"When construing a statute, our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'"  *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)).  "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used."  *Matzuk v. Price*, 70 Va. App. 474, 483 (2019) (quoting *Jones v. Commonwealth ex rel. Moll*, 295 Va. 497, 504 (2018)); *see also Dietz v. Commonwealth*, 294 Va. 123, 133 (2017) (applying the "ordinary and plain meaning" of words not defined in a statute (quoting *Hilton v. Commonwealth*, 293 Va. 293, 299 (2017))).  To find the ordinary and plain meaning of a word, "courts can look to dictionary definitions," *Davenport v. Util. Trailer Mfg.*, 74 Va. App. 181, 196 (2022), or "pertinent analysis in prior case[s]," *Eley v. Commonwealth*, 70 Va. App. 158, 165 (2019).

Black's Law Dictionary defines "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for," or "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing."  *Claim*, *Black's Law Dictionary* (11th ed. 2019).  Relying on Websters Third New

---

[15] Exhaustion is required so long as the claimant had the temporal opportunity to exhaust his or her administrative remedies.

International Dictionary, the Supreme Court has defined "claim" as "'an authoritative or challenging request,' 'a demand of a right or supposed right,' or 'a calling on another for something due or supposed to be due.'" *Stamie E. Lyttle Co. v. Cnty. of Hanover*, 231 Va. 21, 26 n.4 (1986) (quoting *Claim*, *Webster's Third New International Dictionary* (1981)). These definitions suggest that "claim" requires some sort of action, such as making a demand or asserting a right, which suggests that it is more than the occurrence of an injury as argued by the Commonwealth.[16] And, as noted by the majority, this is also consistent with the language of Code § 8.01-195.3(7), which describes a claim "by" an inmate. Although a claim can be asserted through a complaint, definitionally, it also encompasses the written notice of claim that the VTCA requires a claimant to provide to the Commonwealth before filing a complaint.[17]

Beyond the ordinary meaning of the word, the general process for pursuing a claim against the Commonwealth also indicates that the claim exists and is made well before a complaint is filed. *See Geico Advantage Ins. Co. v. Miles*, 301 Va. 448, 455 (2022) ("[W]ords in

---

[16] The Commonwealth makes a strong argument that the appropriate time to evaluate the status of the claimant is at the time of the injury. Practically speaking, the Commonwealth's position is perhaps the most consistent with the purpose of the exhaustion requirement. *See AlBritton v. Commonwealth*, 299 Va. 392, 399-400 (2021) ("The exhaustion requirement 'protects "administrative agency authority"' and 'promotes efficiency' by encouraging disputes to be resolved 'quickly and economically' during the prelitigation administrative process." (quoting *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006))). The Commonwealth's position is also consistent with the distinction between when a claim is created (i.e., when a cause of action accrues, here when the allegedly tortious conduct causing personal injury occurred) versus when a claim is asserted such as by making a demand or request of some kind. The VTCA appears to refer to when the claim is asserted because Code § 8.01-195.3(7) describes claims "by" an inmate, which, consistent with the dictionary definition of claim, suggests that a demand or request of some sort must be made.

[17] The majority contends that my interpretation of the statute would read "nature of" out of the statute. I disagree. The majority points out that the "nature of" the claim "describes the features of the claim, including 'the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable,' not a 'demand' for money or an 'assert[ion] of a right' to a particular remedy." I agree that the notice of claim does not include an express demand for money. I would find, however, that describing an injury and the liable agency is, by its very nature, an assertion of a right to recovery against the Commonwealth.

a statute are to be construed according to their ordinary meaning, given the context in which they are used." (alteration in original) (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993))). Code § 8.01-195.6 requires a claimant to file a notice of claim. A notice of claim is "a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable." Code § 8.01-195.6(A); *see also* Code § 8.01-196.7 ("Every claim cognizable against the Commonwealth or a transportation district under this article shall be forever barred, unless within one year after the cause of action accrues to the claimant the notice of claim required by § 8.01-195.6 is properly filed."). The purpose of the notice requirement is to "provide notice to the Commonwealth of a facially cognizable claim so that the Commonwealth is in a position to *investigate and evaluate that claim*." *Bates v. Commonwealth*, 267 Va. 387, 394 (2004) (emphasis added). Once it has investigated the claim, the Commonwealth can then determine whether it wants to settle the claim prior to litigation or deny the claim. Code § 8.01-195.5. This is often referred to as the claim stage. For the Commonwealth to investigate and make a decision about the claim, logically, a claim must already have been made.

Even the statutory language setting out the authority of the Attorney General and the Director of the Division of Risk Management to settle a claim supports this interpretation. While the Attorney General has the authority to settle a claim at any point, the Director of the Division of Risk Management may only "adjust, compromise and settle claims against the Commonwealth cognizable under this article *prior* to the commencement of suit unless otherwise directed by the Attorney General." Code § 8.01-195.5 (emphasis added). That the Director of the Division of Risk Management can only settle a claim prior to the "commencement of suit," *i.e.*, the filing of a complaint, necessarily means that a claim has been made against the Commonwealth prior to that point.

Further, Code § 8.01-195.7 establishes that a claimant may only proceed with a lawsuit (1) "upon the denial of the claim by the Attorney General or the Director of the Division of Risk Management" or (2) "after the expiration of six months from the date of filing the notice of claim unless, within that period, the claim has been compromised and discharged pursuant to § 8.01-195.5." This language again indicates that the "claim" exists and is made prior to the filing of the complaint. Finding that a "claim by an inmate" is not made until the complaint is filed directly contradicts the way claim is used in these provisions. *See Eberhardt v. Fairfax Cnty. Emp.'s Ret. Sys. Bd. of Tr.*, 283 Va. 190, 195 (2012) ("[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning.").

I recognize that there are provisions in the VTCA that seem to suggest a different interpretation. Indeed, the majority has done an excellent job analyzing the statutory language and crafting a persuasive argument concluding that "claim by an inmate" refers to the time the complaint is filed.[18] But in those provisions, the General Assembly uses both "claim" and "action" or "suit." [19] *See, e.g.*, Code § 8.01-195.7 (An "action," which is initiated by filing a complaint, "may be commenced . . . upon denial of the claim by the Attorney General or the Director of the Division of Risk Management."); Code § 8.01-195.5 (The Director of the Division of Risk Management has authority to "settle claims against the Commonwealth . . .

---

[18] Other provisions seem to support the Commonwealth's position that a claim exists when the injury occurred. Indeed, that the claimant has remedies to exhaust through the Department of Corrections before he or she even turns to the VTCA suggests that a claim exists during that process. The exhaustion requirement is not simply a "gratuitous roadblock to prisoner litigation." *AlBritton*, 299 Va. at 399. "[E]xhaustion statutes in the prison-litigation context are intended to 'reduce the quantity and improve the quality of prisoner suits.'" *Id.* (quoting *Woodford*, 548 U.S. at 94).

[19] Code § 8.01-2(1) provides that "'*Action*' and '*suit*' may be used interchangeably and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts."

prior to the commencement of suit."). Switching between these terms shows two things. First, by referring to the commencement of an action or suit, the General Assembly demonstrated that it can, if it chooses, specifically place the temporal focus on the proceedings in court. It did not use similar language when drafting the exclusion in Code § 8.01-195.3(7). We assume that the "General Assembly chose, with care, the words it used in enacting the statute . . . ." *PKO Ventures, LLC v. Norfolk Redevelopment & Hous. Auth.*, 286 Va. 174, 183 (2013) (quoting *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 19 n.2 (2013)). Second, by switching between "claim" and the commencement of the action or suit, it demonstrates that they mean different things.

The majority contends that my interpretation of "claim by an inmate," and my focus on the notice of claim, is unworkable given what it views as the three distinct stages the VTCA requires for a suit to fall within the Commonwealth's waiver of sovereign immunity.[20] To the contrary, I believe that my interpretation gives proper effect to *all* provisions in the VTCA while the majority position undercuts the entire purpose of the notice of claim, which is to notify the Commonwealth of the claim so that it may investigate and evaluate the claim with an eye towards settling or denying the claim. *See Bates*, 267 Va. at 394; Code § 8.01-195.5. At best, the majority position treats the notice of claim and the provisions relating to the Attorney General and the Director of the Division of Risk Management as mere procedural hurdles necessary to file a complaint. At worst, it reads these provisions entirely out of the VTCA; if no

---

[20] The majority also contends that my interpretation "runs into trouble" with the full text of Code § 8.01-195.3(7), which excludes any "claim by an inmate . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies . . . ." The majority suggests that my interpretation of "claim by an inmate" seems to require the claimant to file the affidavit at the time the notice of claim is filed, while the VTCA requires the affidavit to be filed with the complaint. But nothing in the statute states when the affidavit must be filed or that it must be filed simultaneously with the making of the claim. Further, that same provision also provides that "[t]he time for filing the notice of tort claim shall be tolled during the pendency of the grievance procedure." Code § 8.01-195.3(7). This seems to recognize that the claim is made when the notice of claim is filed, as the claimant must exhaust these remedies prior to making a claim.

claim has been made, then there is nothing for the Attorney General and the Director of the Division of Risk Management to settle or deny, rendering those provisions meaningless form without substance. *See Spratley v. Commonwealth*, 298 Va. 187, 195 (2019) ("discourag[ing] any interpretation of a statute that would render any part of it useless, redundant or absurd" and instead "seek[ing] to read statutory language so as to give effect to every word" (quoting *Owens v. DRS Auto. FantomWorks, Inc.*, 288 Va. 489, 497 (2014))).

A claim cannot be described, investigated, and settled or denied unless that claim has already been made. The VTCA provides that all of this happens prior to a complaint ever being filed. Stepping back and taking a broad view of the statutory process set out in the VTCA, the provisions suggest the following: a cause of action accrues; a claim is made via a notice of claim; the Commonwealth evaluates the claim and either settles, denies, or ignores the claim; and then, if the Commonwealth denies or ignores the claim, or otherwise fails to make a settlement offer acceptable to the claimant, the claimant can proceed to the litigation stage and pursue its claim through litigation. The VTCA is not a model of clarity. But this interpretation gives effect to both the provisions that refer to a claim made prior to the commencement of litigation and those that refer to a claim pursued through litigation. It is also the interpretation that is most consistent with the requirement that we strictly construe the VTCA and any waiver of sovereign immunity. *See Doud v. Commonwealth*, 282 Va. 317, 320 (2011) ("In the VTCA, the Commonwealth has waived its sovereign immunity for tort claims in the circumstances to which the statute applies, but the waiver is a limited one and the VTCA, being an enactment in derogation of the common law, is strictly construed."). Therefore, I would find that the "claim by an inmate" is made at the time the written notice of claim is filed with the Commonwealth, and the claimant's status should be determined at that point in time. Accordingly, I would find that the circuit court did not err in sustaining the Commonwealth's plea in bar, and thus, I respectfully dissent.